J-S66021-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ALPESHKUMAR PATEL, | : | |
| | : | No. 561 MDA 2014 |
| Appellant | : | No. 562 MDA 2014 |

Appeal from the Judgment of Sentence Entered February 27, 2014,
In the Court of Common Pleas of Berks County,
Criminal Division, at Nos. CP-06-CR-0005270-2012
and CP-06-CR-0005274-2012.

BEFORE: BENDER, P.J.E., SHOGAN and MUSMANNO, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED NOVEMBER 25, 2014**

Appellant, Alpeshkumar Patel, appeals from the judgment of sentence entered on February 27, 2014, in the Berks County Court of Common Pleas. We affirm.

In its Pa.R.A.P. 1925(a) opinion, the trial court set forth the relevant facts of this matter as follows:

> Detective Douglas Weaver, at that time operating in an undercover capacity, was assigned to assist Detective Joseph Walsh with an investigation into possible drug sales occurring at E-Z Shoppe, a convenience store located at 44 East Lancaster Avenue in the Borough of Shillington. NOTES OF TESTIMONY (N.T.) DEC. 30, 2013 at 29-30. On September 28, 2012, Detective Weaver entered the store and approached the counter. *Id*. at 30. Appellant and Nilesh Patel, a coworker of Appellant, were behind the counter at that time. *Id*. Detective Weaver testified that he engaged in a transaction for Giggle, a

counterfeit controlled substance commonly advertised as a scented potpourri:

> A: I asked [Appellant] if I could have two Giggle. And he looked to his left at the other Indian male that was seated on a chair behind the counter. And the male that was seated nodded his head up and down.
>
> And at that point [Appellant] reached underneath the counter, opened up a gray plastic bag, and removed from that bag a two gram envelope containing two grams of Giggle and placed it on the counter.

*Id*. at 31, 33. There was also some verbal communication between the store's employees during this initial transaction:

> Q: And you described an interaction between the defendant, Mr. Patel, and another Indian male. W[ere] there any words said in that interaction?
>
> A: The interaction between the two, the defendant said something that I didn't understand clearly to the other individual who was seated there. And the other individual responded in a language that was English that I could understand.
>
> Q: Okay. And what did that individual say?
>
> A: He said it was all right.

*Id*. at 32. After Appellant placed the Giggle on the counter, Detective Weaver requested another counterfeit controlled substance called Cloud 9:

> Q: And after [Appellant] had placed the Giggle on the counter, what happened next?
>
> A: I asked him if I could have a ten of Cloud 9.
>
> Q: And what happened when you asked that question?

> A: Once again he looked at the second Indian male that was seated and made eye contact with him. And the second Indian male shook his head up and down and said okay. He then went to the same location, got the same bag, opened it up and put a ten gram envelope or packet of Cloud 9 on the counter.

*Id*. at 33-34. Detective Weaver paid a total of $84.80—$20 for the Giggle and $60 for the Cloud 9, plus tax. *Id.* at 35. After the transaction, but while the envelopes of Giggle and Cloud 9 were still sitting on the counter, another patron entered the store and walked towards the counter. *Id*. at 36-37. Detective Weaver testified that Nilesh Patel "told me to put them in my pocket because someone was coming in." *Id*. at 37. Detective Weaver conducted two or three additional purchases of synthetic marijuana in the subsequent week or so. *Id*. at 38. During each of these additional transactions, Appellant was the one to sell the controlled substances, which were concealed behind the counter. *Id*. at 38-39. No cash register was used and no receipt was furnished. *Id*. at 39.

Detective Walsh and several other officers executed a search warrant of the store on October 11, 2012. *Id*. at 53-54. The officers seized eleven items, including a black plastic bag (containing a white plastic bag containing four bags of Cloud 9), United States currency, clear plastic baggies, a scale, and several glass pipes. *Id*. at 57-58. The glass pipes would have been in plain view to customers; the packing materials, scales, and Cloud 9 were behind the counter in drawers. *Id*. at 61.

The Commonwealth also presented testimony from Detective Anthony DeFazio, an expert in the field of narcotics investigation, who concluded that Appellant possessed the counterfeit controlled substances with the intent to deliver. *Id*. at 79. Detective DeFazio testified that his conclusion was based on the storage of the contraband, the scales, the buy money, the packaging material, the glass pipes, and the concealment of the contraband within the store. *Id*. at 80-82.

Trial Court Opinion, 6/24/14, at 2-3 (footnotes omitted).

On December 23, 2013, following a jury trial, Appellant was found guilty of delivery of a controlled substance, possession with intent to deliver a controlled substance ("PWID"), conspiracy to commit PWID, possession of a controlled substance, and conspiracy to commit possession of a controlled substance.[1]  On February 27, 2014, the trial court sentenced Appellant to an aggregate term of two to four years of incarceration.  Appellant filed a timely appeal.

On appeal, Appellant raises one issue for our consideration:

Whether there was insufficient evidence to support the jury's verdict as the Commonwealth failed to establish Appellant knowingly possessed synthetic marijuana where Appellant believed the item to be tobacco?

Appellant's Brief at 8.

When examining a challenge to the sufficiency of the evidence:

The standard we apply . . . is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.  In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder.  In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined

---

[1] The synthetic marijuana was chemically tested, and those tests revealed it contained the following Schedule I controlled substances: JWH 018 (35 P.S. § 780-104(1)(vii)(2)(B)); JWH 210 (35 P.S. § 780-104(1)(vii)(2)(H)); JWH 250 (35 P.S. § 780-104(1)(vii)(6)(B)); and XLR-11 (35 P.S. § 780-104(1)(vii)(12)).  N.T., Trial, 12/30/13, at 148 (Commonwealth's Exhibit 6).

circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Orr**, 38 A.3d 868, 873 (Pa. Super. 2011) (quoting

**Commonwealth v. Hansley**, 24 A.3d 410, 416 (Pa. Super. 2011)).

As noted above, Appellant was convicted of delivery of a controlled substance, PWID, conspiracy to commit PWID, possession of a controlled substance, and conspiracy to commit possession of a controlled substance. The Crimes Code definitions of these offenses are set forth below:

**Possession of a controlled substance:**

Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.

35 P.S. § 780-113 (a)(16).

**PWID:**

Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113 (a)(30).

**Conspiracy:**

**Definition of conspiracy**.--A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime[.]

18 Pa.C.S. 903 (a)(1).[2]  Appellant's narrow argument is that he did not know he possessed, or conspired to possess, synthetic marijuana.  Appellant's Brief at 10.  Thus, he claims that the Commonwealth failed to establish the necessary *mens rea*.  We disagree.

The trial court cogently addressed Appellant's challenge as follows:

> The Commonwealth introduced ample evidence to establish that Appellant knowingly possessed synthetic marijuana. When an undercover officer requested Giggle, a synthetic marijuana product, Appellant looked to a coworker, Nilesh Patel, for permission. Appellant again sought the coworker's permission when the undercover officer requested Cloud 9, another synthetic marijuana product. The synthetic marijuana was significantly more expensive than ordinary tobacco. Additionally, the undercover officer was told to put the products in his pocket when another customer began approaching the counter. During this and subsequent controlled buys by the undercover officer, no cash register was used and no receipt was furnished. The synthetic marijuana was always hidden from view behind the counter and within plastic bags. Execution of a search warrant also revealed clear plastic baggies, a scale, and several glass pipes. Finally, an expert witness in the

---

[2] Clearly, criminal conspiracy alone is not a possessory offense.  Our focus here is on the objects of the conspiracy, which in the case at bar, are the aforementioned underlying crimes of possession and PWID.

field of narcotics investigations concluded that Appellant possessed the synthetic marijuana with the intent to sell.

In light of this testimony, the Commonwealth clearly presented sufficient evidence for a reasonable jury to conclude that Appellant knowingly possessed synthetic marijuana. As discussed *supra*, courts must substantially defer to the jury as fact-finder. We are not entitled to reconsider the evidence or determine whether the pertinent witnesses were credible. Accordingly, Appellant's sufficiency of the evidence claim lacks merit.

Trial Court Opinion, 6/24/14, at 5 (footnote omitted).

Examining the evidence in its totality and in a light favorable to the Commonwealth, we agree with the trial court that the evidence was sufficient for the jury to reasonably find that Appellant was well aware of the illicit nature of the synthetic marijuana. Accordingly, Appellant's sufficiency of the evidence argument is meritless.

For the reasons set forth above, we conclude that Appellant is entitled to no relief. Therefore, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/25/2014

-7-