**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Jeffrey ORR, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 12, 2011.
Filed Dec. 19, 2011.

Robin Forrest, Public Defender, Philadelphia, for appellant.

Catherine B. Kiefer, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., FORD ELLIOTT, P.J.E., MUSMANNO, BENDER, GANTMAN, PANELLA, ALLEN, LAZARUS, and MUNDY, JJ.

OPINION BY GANTMAN, J.:

Appellant, Jeffrey Orr, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his bench trial convictions for robbery, conspiracy to commit robbery, and possessing instruments of crime ("PIC").[1] Appellant asks us to determine whether the Commonwealth presented sufficient evidence to sustain his convictions or, alternatively, whether his convictions are against the weight of the evidence,

1. 18 Pa.C.S.A. §§ 3701(a)(1)(ii); 903(a)(1); 907(a), respectively.

where George Thompson ("Victim") did not positively identify Appellant as the perpetrator in later proceedings. We hold the Commonwealth presented sufficient evidence to support Appellant's convictions, and the court correctly found Appellant's convictions were not against the weight of the evidence, given the circumstantial evidence linking Appellant to the crimes charged, which also corroborated Victim's unequivocal identification of Appellant offered shortly after the robbery. Accordingly, we affirm the judgment of sentence.

The relevant facts and procedural history of this case are as follows. On February 8, 2008, at approximately 10:30 p.m., Victim was walking home on the 2800 block of Jasper Street in South Philadelphia. As he was walking, Victim noticed two young men sitting on opposite sides of the street. When Victim passed the young men, they stood up and started to follow Victim. Victim began to run, but the two men chased after him, shouting: "Hold it. Don't move. Don't move, old head." Victim observed both men had guns in their hands, so Victim stopped and raised his hands above his head. The two men continued to yell: "Don't move. Give me money." As Victim stood still, the shorter of the two men stood in front of Victim and pointed a gun at Victim, while the taller of the two men stood behind Victim. Although Victim could not see if the taller man was holding a gun to Victim's back, Victim presumed he was. The two men patted down Victim, and the shorter man said: "Give me your jacket." Victim complied, removed his jacket, and dropped it on the ground. Victim's jacket contained, *inter alia*, his house keys, cell phone, glasses, and exactly twenty-six dollars

($26.00). As the men patted down Victim, they saw his wallet, so Victim removed his wallet and threw it on the ground. At one point, the shorter man swung his gun at Victim's face. Victim ducked and put his hand up to block the gun; the gun struck and injured Victim's finger. The men picked up Victim's belongings and fled together toward Somerset Street.

After the robbery, Victim ran to his neighbors' houses for help but no one responded. Consequently, Victim was forced to "break into" his own house, as the men had stolen his house keys. Victim immediately called the police, and Officer Denise Flynn arrived at Victim's house within five minutes of Victim's call. Victim described the robbers to Officer Flynn, recalling both men appeared to be in their twenties, with light complexions, and carried guns. Victim described the shorter man as approximately 5'3" or 5'4" and Hispanic. Victim explained the taller man, who stood behind Victim during the robbery, was approximately 5'9", had a lighter complexion than the shorter man, had a red beard, and was wearing a camouflage-patterned hooded jacket and gray pants. Officer Flynn put out a flash description of the suspects. Approximately five minutes later, Officer Erik Pross reported he was holding two men matching the descriptions of the suspects at the 2800 block of Boudinot Street, about three and one-half blocks away from Victim's home.[2]

Officer Flynn took Victim in her police vehicle to the location where Officer Pross was holding the suspects. Officer Flynn testified that when she asked Victim to look at the men, Victim positively identified Appellant as the taller man involved in the robbery, exclaiming: "Yes. That's him. That's the guy. That's the guy that did

**2.** Officer Pross stopped the men at a location consistent with the direction Victim saw the

perpetrators run after the robbery.

it." Officer Flynn asked Victim if he was certain of his identification of Appellant, and Victim replied affirmatively. Appellant was light-skinned, had a red beard, was in his twenties, and wore a gray/black camouflage hooded jacket and gray pants when Victim identified him. Victim also stated the shorter man Officer Pross had detained was not the other man involved in the robbery. Subsequently, Officer Pross arrested and searched Appellant. Officer Pross recovered exactly twenty-six dollars ($26.00) from Appellant's person.

The Commonwealth charged Appellant with robbery and related offenses. The court held a bench trial on January 28, 2009. Following trial, the court convicted Appellant of robbery, conspiracy to commit robbery, and PIC. Appellant proceeded to sentencing on March 10, 2009. Prior to sentencing, Appellant made an oral post-trial motion challenging the sufficiency and weight of the evidence, which the court denied. Thereafter, the court sentenced Appellant to an aggregate term of five (5) to ten (10) years' imprisonment, plus five (5) years' probation. On March 20, 2009, Appellant timely filed a post-sentence motion, which the court denied on April 21, 2009. On May 19, 2009, Appellant timely filed a notice of appeal. On September 29, 2009, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa. R.A.P. 1925(b), which Appellant timely filed on October 19, 2009.

On January 28, 2011, a panel of this Court reversed Appellant's judgment of sentence, with one dissent. The majority decided Victim's identification of Appellant based only on Appellant's clothing and appearance was so inherently unreliable that the evidence presented was insufficient to sustain Appellant's convictions, particularly where Victim did not positively identify Appellant out of context, from a photo display, a later line-up, or in post-incident court proceedings. The dissent maintained the Commonwealth had presented sufficient circumstantial evidence linking Appellant to the crimes charged and to sustain Appellant's convictions. On March 1, 2011, the Commonwealth filed a petition for *en banc* reargument, which this Court granted on April 4, 2011.

Appellant raises the following issues for our review:

WAS NOT THE EVIDENCE INSUFFICIENT TO CONVICT [APPELLANT] WHERE THE COMMONWEALTH'S ONLY EVIDENCE WAS THE TESTIMONY OF POLICE OFFICERS THAT THE COMPLAINING WITNESS IDENTIFIED [APPELLANT] SHORTLY AFTER THE INCIDENT, BUT WHERE THE COMPLAINING WITNESS MADE NO SUBSEQUENT IDENTIFICATIONS AND TESTIFIED AT TRIAL THAT HE IDENTIFIED [APPELLANT] BASED SOLELY ON HIS CLOTHING AND BEARD, AS HE NEVER SAW THE PERPETRATOR'S FACE AND THEREFORE COULD NOT IDENTIFY [APPELLANT] AS BEING INVOLVED IN THE ROBBERY?

WAS NOT [APPELLANT'S] CONVICTION AGAINST THE WEIGHT OF THE EVIDENCE TO SUCH A DEGREE AS TO SHOCK THE CONSCIENCE AS THE COMPLAINING WITNESS TESTIFIED REPEATEDLY AND UNEQUIVOCALLY THAT HE COULD NOT IDENTIFY [APPELLANT] AS ONE OF THE PEOPLE WHO COMMITTED THIS CRIME, AND WHERE THE COMPLAINING WITNESS DID NOT IDENTIFY [APPELLANT] IN A LINE–UP PROCEDURE, AT A PRELIMINARY HEARING, OR AT TRIAL, AND THUS THE TRIAL COURT

ABUSED ITS DISCRETION BY FAILING TO SET ASIDE THE VERDICT AND GRANT A NEW TRIAL?

(Appellant's Brief at 4).

For purposes of disposition, we combine Appellant's issues. Appellant argues Victim testified repeatedly he was not able to view the face of the man who stood behind him during the robbery. Appellant asserts Victim saw the taller perpetrator for only a brief moment from across the street before the robbery began. Appellant emphasizes Victim did not positively identify Appellant as the perpetrator from a photo array on the night of the robbery following Appellant's arrest, at a later line-up, at the preliminary hearing, or at trial.[3] Appellant insists Victim described the taller perpetrator as 5'8" or 5'9", but Appellant is actually 6'2". Appellant contends Victim admitted at trial that Appellant is much taller than the man who robbed him. Appellant avers Officer Flynn was the only person to testify as to Victim's positive identification of Appellant immediately following the robbery, and Victim clarified at trial he had identified Appellant based only on the clothing he was wearing and a similar red beard. Appellant maintains an identification based solely on clothing is insufficient to sustain a conviction. Appellant claims Officer Pross testified the flash sent over the police radio described the perpetrator as wearing a green camouflage jacket, but Appellant's jacket was gray/black camouflage. Appellant complains the Commonwealth did not present evidence of the denominations of the twenty-six dollars recovered from Appellant's person, compared to the denominations of the money stolen from Victim. Appellant highlights that Officer Pross did not recover Victim's jacket, wallet, house keys, glasses, or cell phone from Appellant's person. Appellant suggests there is no evidence in the record of witness intimidation in this case. Alternatively, Appellant declares the trial court gave undue weight to Officer Flynn's testimony with respect to Victim's identification of Appellant very soon after the robbery. Appellant concludes the Commonwealth failed to present sufficient evidence to sustain Appellant's convictions or, alternatively, Appellant's convictions are against the weight of the evidence; and this Court must reverse Appellant's judgment of sentence and discharge him, or grant him a new trial. We disagree.

When examining a challenge to the sufficiency of the evidence:

The standard we apply . . . is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. **Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.** Moreover, in applying the above test, **the entire record must be evaluated and all evi-**

---

**3.** The certified record does not contain the photo array or the testimony from the prelim-

inary hearing.

dence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley,* 24 A.3d 410, 416 (Pa.Super.2011) (quoting *Commonwealth v. B. Jones,* 874 A.2d 108, 120–21 (Pa.Super.2005) (emphasis added)). "This standard is equally applicable in cases where the evidence is circumstantial, rather than direct, provided that the combination of evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Cox,* 546 Pa. 515, 528, 686 A.2d 1279, 1285 (1996), *cert. denied,* 522 U.S. 999, 118 S.Ct. 567, 139 L.Ed.2d 407 (1997).

Additionally, the following principles apply to our review of a weight of the evidence claim:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the ... verdict if it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Small,* 559 Pa. 423, [435] 741 A.2d 666, 672–73 (1999)[, *cert. denied,* 531 U.S. 829, 121 S.Ct. 80, 148 L.Ed.2d 42 (2000) ]. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney,* 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert. denied,*

542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004) (some internal citations omitted).

Section 3701 of the Crimes Code defines the crime of robbery as follows:

**§ 3701. Robbery**

**(a) Offense defined.—**

(1) A person is guilty of robbery if, in the course of committing a theft, he:

\* \* \*

(ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury

\* \* \*

(2) An act shall be deemed "in the course of committing a theft" if it occurs in an attempt to commit theft or in flight after the attempt or commission.

18 Pa.C.S.A. § 3701(a)(1)(ii), (a)(2). Section 907 of the Crimes Code defines the crime of possessing instruments of crime in relevant part as follows:

**§ 907. Possessing instruments of crime**

**(a) Criminal instruments generally.**—A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally.

\* \* \*

**(d) Definitions.**—As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

\* \* \*

**"Weapon."**—Anything readily capable of lethal use and possessed under circumstances not manifestly appropriate for lawful uses which it may have. The term includes a firearm which is not loaded or lacks a clip or other component to render it immediately operable,

and components which can readily be assembled into a weapon.

18 Pa.C.S.A. § 907(a), (d). Section 903 of the Crimes Code defines the crime of criminal conspiracy in relevant part as follows:

### § 903. Criminal Conspiracy

**(a) Definition of conspiracy.**—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

> \*　　\*　　\*

**(e) Overt act.**—No person may be convicted of conspiracy to commit a crime unless an overt act in pursuant of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired.

18 Pa.C.S.A. § 903(a)(1), (e).

■ "[E]vidence of identification need not be positive and certain to sustain a conviction." *Commonwealth v. S. Jones*, 954 A.2d 1194, 1197 (Pa.Super.2008), *appeal denied*, 599 Pa. 708, 962 A.2d 1196 (2008). Although common items of clothing and general physical characteristics are usually insufficient to support a conviction, such evidence can be used as other circumstances to establish the identity of a perpetrator. *Commonwealth v. Minnis*, 312 Pa.Super. 53, 458 A.2d 231, 233–34 (1983). Out-of-court identifications are relevant to our review of sufficiency of the evidence claims, particularly when they are given without hesitation shortly after the crime while memories were fresh. *Id.* at 234. Given additional evidentiary circumstances, "any indefiniteness and uncertainty in the identification testimony goes to its weight." *Id.* at 233.

■ Instantly, the Commonwealth presented the following evidence at trial: (1) two men seized Victim at gunpoint, shouting: "Don't' move, old head. Don't move"; (2) Victim described the taller man as approximately 5'9", in his twenties, with a red beard, light complexion, and wearing a camouflage-patterned hooded jacket and gray pants; (3) the two men forcibly took Victim's wallet and jacket, containing Victim's keys, cell phone, eyeglasses, and exactly twenty-six dollars; (4) based on Victim's description, police stopped Appellant within three to five blocks of the crime scene and within twenty-five minutes of the crime, in a location consistent with the direction in which Victim saw the perpetrators flee after the robbery; (5) Appellant was wearing a camouflage-patterned, hooded jacket and gray pants; (6) Appellant had a red beard and a light complexion; (7) Appellant was taller than Victim had estimated, but Victim confirmed at trial the perpetrator was definitely "taller than the average guy";[4] (8) Appellant was twenty-six years old on the date of the crime; (9) Appellant had exactly twenty-six dollars on his person; and (10) Officer Flynn testified that, upon observing Appellant shortly after the crime, Victim exclaimed: "Yes. That's him. That's the guy. That's the guy that did it."

Notwithstanding the lack of in-court identification of Appellant at trial,[5] our re-

---

**4.** At trial, the parties stipulated Appellant is 6'2". Officer Flynn testified, however, Victim is only about 5'3" or 5'4".

**5.** Significantly, Victim did **not** state at any point during any court proceeding that he had misidentified Appellant shortly after the incident or had made a mistake in that identification. Victim simply maintained at trial

view of the entire record, with due consideration of all of the circumstantial evidence presented in the light most favorable to the Commonwealth as verdict winner, confirms there was sufficient evidence to sustain Appellant's convictions. *See* 18 Pa. C.S.A. §§ 3701; 907; 903; *Hansley, supra*; *Minnis, supra.* Compare *Commonwealth v. Crews*, 436 Pa. 346, 260 A.2d 771 (1970) (holding evidence was insufficient to convict appellant of first-degree murder where only identification evidence linking appellant to crime was witness' description of perpetrator as black male with light complexion wearing gold sweater, similar in height to appellant; in light of number of people who fit that general physical description and common nature of gold sweater, this evidence alone was insufficient to convict appellant); *Commonwealth v. Grahame*, 333 Pa.Super. 224, 482 A.2d 255 (1984) (holding evidence based **solely** on store clerk's identification of appellant was insufficient to sustain convictions, where store clerk testified she did not get good look at third robber, did not know third robber, did not remember if appellant was third robber, and failed to identify appellant at pretrial lineup; store clerk's identification testimony was further weakened by her statement: "All blacks look alike"). Here, the circumstantial evidence linking Appellant to the crimes charged was sufficient to sustain the convictions. *See Cox, supra*; *Hansley, supra.*[6]

With respect to Appellant's weight of the evidence claim, the Commonwealth had

the following exchange with Victim at trial regarding Victim's description of the perpetrators and identification of Appellant shortly after the robbery:

BY [THE COMMONWEALTH]:

Q: You identified one man that night; correct?

A: Yes.

Q: And the man you identified that night, was he the approximate age as the person that you walked past on the side street who was wearing the camouflage jacket?

A: Yes. He looked like a man in his 20's, yes.

Q: And the complexion—

A: Same kind of complexion, yes.

Q: Was the race and the complexion of the man you identified, was that consistent with the person that robbed you?

A: Yes.

Q: Now, at any point during this incident when you were robbed, did you identify or were you able to see any facial hair on the person wearing the camouflage jacket?

A: Yes.

Q: And the person, sir, that you identified that night to the police—

A: He had a red beard.

Q: Was his facial hair, the red beard, was that consistent or similar to the beard of the person who robbed you?

A: Yeah.

that he had been unable to view the taller perpetrator's face during the robbery. As trier of fact, the court heard all of the evidence presented at trial, observed the demeanor of the witnesses, and decided the evidence was sufficient to sustain the convictions. As far as credibility determinations are concerned, we are not in any position to label Victim's testimony as candid or truthful. See *Hansley, supra.* Likewise, our function is not to reevaluate or disturb the court's own credibility determinations. *See id.*

**6.** Further, the record belies Appellant's contention that Officer Pross testified the flash sent over the police radio described the perpetrator as wearing a "green" camouflage jacket. Rather, Officer Pross merely wrote (incorrectly) in his arrest report that Appellant was wearing a green camouflage jacket at the time of his arrest.

Q: And you said, sir, that the person you identified that night to the police was wearing a camouflage jacket?

A: Yes.

Q: Sir, was the camouflage jacket that [the] person [you identified] was wearing, was that consistent with the camouflage jacket that the person who robbed you was wearing?

A: Yes, sir.

Q: And the person who you identified that night, that jacket had a hood on it?

A: Yes.

Q: And sir, the person you identified that night to the police, did that jacket have a hood?

A: He had the hood on his face.

Q: The hood that was on the jacket of the person that you identified that night to the police, was that consistent with the hood worn by the person who robbed you?

A: I guess.

Q: Sir, you testified that the person who robbed you had on gray pants?

A: Yes.

Q: And the person you identified that night to the police—

A: Had gray pant[s] and the same kind of jacket.

Q: Were those pants, sir, consistent or similar to the pants that were worn by the person who robbed you?

A: Yes, sir.

Q: The person you identified that night to the police, was that person's height consistent or similar to the person who robbed you?

A: It's similar.

(N.T. Trial, 1/28/09, at 28–30). In evaluating Appellant's claim, the trial court reasoned:

[A]ppellant's contention that [Victim] never identified [A]ppellant is without merit. Identification testimony does not need to be positive and certain in order to convict, it only needs to constitute proof beyond a reasonable doubt. Any indefiniteness and uncertainty in the identification testimony goes to its weight. The fact that [Victim] waivered on [A]ppellant's [identification] at the time of trial is relevant only to the weight and credibility of his testimony. [Victim] indicated that he remembered [A]ppellant as one of the individuals who robbed him. [Victim] indicated that he remembered [A]ppellant's red beard and jacket. When Officer Flynn took [Appellant] to [Boudinot] Street where another officer stopped an individual fitting the flash description, [Victim] immediately identified [A]ppellant as one of the men who robbed him. The court weighed the evidence and [Victim's] testimony and found there was sufficient evidence to find [A]ppellant guilty of the charges.

(Trial Court Opinion, filed 1/25/10, at 6) (internal citations omitted). We see no reason to disturb the court's decision. *See Champney, supra.*

Based on the foregoing, we hold the Commonwealth presented sufficient evidence to support Appellant's convictions, and the court correctly found Appellant's convictions were not against the weight of the evidence, given the circumstantial evidence linking Appellant to the crimes charged, which also corroborated Victim's unequivocal identification of Appellant offered shortly after the robbery. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

*President Judge Emeritus FORD ELLIOTT files a Dissenting Opinion in which Judge BENDER joins.

DISSENTING OPINION BY FORD
ELLIOTT, P.J.E.:

I respectfully dissent. I believe that
this case presents insufficient evidence as
to the perpetrator's identity to support a
conviction.

In my 20 plus years on the appellate
bench, I have upheld numerous convictions
in cases where a victim's identification of
the perpetrator becomes equivocal by time
of trial. As set forth by the Majority, in
such a situation, the initial street identifi-
cation by the victim, supported by police
testimony, has been sufficient to support a
conviction. However, I believe the facts of
this case are so unique as to require a
different result.

Instantly, appellant understandably at-
tacks the identification evidence presented
by the Commonwealth. Although, accord-
ing to Officer Flynn, Mr. Thompson identi-
fied appellant at the site where he was
being held, every subsequent effort to get
Mr. Thompson to identify appellant as a
participant has been unsuccessful. The
night of appellant's arrest, Mr. Thompson
was asked to look at police photographs,
but could not identify either assailant.
(Notes of testimony, 1/28/09 at 39.) Later,
a lineup was conducted in which appellant
was placed, yet Mr. Thompson did not
identify appellant as one of the two rob-
bers. (*Id.*) At appellant's preliminary
hearing, Mr. Thompson failed to identify
appellant as a participant in the robbery
(*id.* at 40), and at trial, when pointedly
asked if he recognized "anyone from that
night," Mr. Thompson candidly replied
"No."[1] (*Id.* at 32.) When cross-examined,
Mr. Thompson more emphatically indicat-
ed his inability to identify appellant during
the following exchange:

Q.: And you didn't identify him at the
preliminary hearing, correct?

A.: I don't know. I have not seen this
man before.

Q.: And what you are here saying is you
don't even think this is the guy?
You're not sure; correct?

A.: All I could say, I see the red beard.
I see his face. I cannot say he did
it. I didn't see his face.

*Id.* at 40.

In reality, the Commonwealth rests its
identification evidence solely on the testi-
mony of Officer Flynn and not Mr. Thomp-
son. Officer Flynn testified that when she
responded to the call of a suspect in custo-
dy, she asked Mr. Thompson to look over
to the spot where appellant was being
held. Officer Flynn's testimony reveals
that when Mr. Thompson did so, he re-
sponded "that's him," referring to appel-
lant.

If the above was the whole of the evi-
dence of record, our standard of review
would compel me to accept the identifica-
tion testified to by Officer Flynn. This is
so because an on-the-scene identification
under certain circumstances may be ade-
quate even though a later in-court identifi-
cation is equivocal. Here, however, the in-
court testimony of Mr. Thompson is actu-
ally unequivocal as to the fact that he is
unable to identify appellant. Mr. Thomp-
son candidly provided greater elucidation
as to the how and why of that positive
identification testified to by Officer Flynn.
At trial, on cross-examination, when ques-
tioned about the initial identification, the
following exchange took place:

Q.: And you said that basically what you
did, the Commonwealth kept saying
you made an identification.

1. A thorough review of the record as well as
questions to the Commonwealth at oral argu-

ment supports the fact that there is no evi-
dence of witness intimidation in this case.

You didn't make an identification of the person's face that evening? You made an identification of clothing; correct?

A.: Correct.

Q.: And I believe you were saying to the court at some point that anybody could have clothing on?

A.: The same kind, yes.

Q.: That's right.

And I believe you also said on direct examination that as far as you were concerned, that person might just have been guilty of wearing the same type of clothing; correct?

A.: Exactly.

Q.: Because you don't know if that person is in fact the person who did it; correct?

A.: Absolutely.

Q.: And in fact, when you went to the lineup, would it surprise you to know that Mr. Orr was at the lineup that evening on May 7th, 2008?

A.: Yes, I saw him there.

Q.: So you did see him but you couldn't say he was the one—

A.: I can't say it's him. I can't say it's him now because I did not see his face to say at one point it was him. The only thing that he is guilty of to my knowledge is dressing the same way.

*Id.* at 40–42. After additional questioning, Mr. Thompson reiterated that he identified appellant that night due to the way he was dressed and the fact that he had a red beard:

Q.: Sir, once again, you cannot say that Mr. Orr is the person who robbed you; correct?

A.: No. Absolutely.

Q.: Because you never saw his face?

A.: I never saw his face, no.

Q.: And once again, in your opinion he was guilty only of wearing similar clothing; correct?

A.: Same or similar clothing and had the red beard.

*Id.* at 51.

Mr. Thompson's testimony at trial makes it clear that the identification testified to by Officer Flynn was made simply due to the similarity in clothing and the presence of a red beard. While attacks upon identification testimony normally go to the weight of the evidence and not to the sufficiency of the evidence,[2] it has further been stated that where the identification evidence is demonstrated to be so inherently unreliable as to make a verdict based upon it one of conjecture or surmise, it will be found insufficient. *Id.,* at 1245 (noting the decision in *Commonwealth v. Grahame,* 333 Pa.Super. 224, 482 A.2d 255 (1984), "held that the store clerk's identification of Grahame was too tenuous to establish, beyond a reasonable doubt, that he was the third robber."). I believe the present case is one of those rare cases where the identification testimony has been demonstrated to be so unreliable as to make a verdict based upon it one of conjecture or surmise. Mr. Thompson's testimony established that he had very little opportunity to observe appellant, and Mr. Thompson further candidly admitted that he could not identify appellant as the perpetrator of the crime in question. Thus, the evidence must be deemed to be insufficient to support the conviction despite the testimony of Officer Flynn which

**2.** *Commonwealth v. Cain,* 906 A.2d 1242, 1245 (Pa.Super.2006) ("[A]ny uncertainty in an eyewitness's identification of a defendant is a question of the weight of the evidence, not its sufficiency.").

was purely based upon Mr. Thompson's ability to identify appellant.