J-S14013-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| | : | |
| BRIAN ELLIOTT, JR. | : | |
| | : | |
| Appellant | : | No. 1255 MDA 2016 |

Appeal from the Judgment of Sentence June 23, 2016
In the Court of Common Pleas of Northumberland County
Criminal Division at No(s):  CP-49-MD-0000258-2016

BEFORE:   GANTMAN, P.J., SHOGAN, J., and STRASSBURGER, J.*

MEMORANDUM BY GANTMAN, P.J.:                    **FILED MARCH 15, 2017**

Appellant, Brian Elliott, Jr., appeals from the judgment of sentence entered in the Northumberland County Court of Common Pleas, following his bench trial conviction for indirect criminal contempt ("ICC").[1]  We affirm.

The relevant facts and procedural history of this case are as follows. Appellant and Victim have one child together and were previously in a relationship.  In or around May 2016, Victim sought a protection from abuse ("PFA") order against Appellant based on allegations that Appellant was stalking and harassing her.  The court held a PFA hearing on May 25, 2016. Appellant failed to appear for the hearing.  Thus, the court entered a final PFA order that day stating: "[Appellant] shall not abuse, harass, stalk or

---

[1] 23 Pa.C.S.A. § 6114(a).

---

*Retired Senior Judge assigned to the Superior Court.

threaten" Victim. (Final PFA Order, entered May 26, 2016, at 1). The order also states: "This Order is entered **after a hearing at which [Appellant] was not present, despite proper service being made.**" (*Id.* at 2) (emphasis in original). The order further awarded Victim temporary exclusive custody of the parties' child and provided that Appellant shall have no partial physical custody/visitation rights. (*Id.*) The PFA order provides a "NOTICE TO THE DEFENDANT" explaining, *inter alia*, that a violation of the PFA order may result in the defendant's arrest on the charge of indirect criminal contempt which is punishable by a fine of up to $1,000 and/or a jail sentence of up to six months. (*Id.* at 3). The last page of the PFA order indicates Appellant was served with the order. (*Id.* at 4).

On June 10, 2016, while the PFA order was in effect, Victim went outside her place of employment and saw Appellant walk by her. Appellant tried to talk to Victim but she went back to work. Later that night, Victim was at home outside on her porch with her son when she noticed Appellant walk by her house. Appellant did not make eye contact with Victim. Victim placed her son in her car and drove away. As Victim approached a stop sign and began to turn the corner, Appellant appeared from in between other vehicles, came up to her window, "got in [Victim's] face" and told Victim that she was "[g]oing to fuckin' listen to [Appellant]." (N.T. ICC Hearing, 6/23/16, at 6). Appellant grabbed Victim through the window and hit her in the side of the head. Victim sustained numerous bruises from the attack as

well as a severe concussion. Victim reported the incident to police the next morning and police subsequently filed a criminal complaint against Appellant for ICC.

On June 23, 2016, the court held a hearing on the ICC charge, at which Victim and Appellant testified. At the conclusion of the hearing, the court convicted Appellant of ICC and sentenced him to three months' imprisonment, plus three months' probation. The court also extended the PFA order for an additional six months. Following sentencing, the court remarked: "These are some of the most serious injuries I have seen in some time in a PFA case." (*Id.* at 29).

Appellant filed an untimely post-sentence motion on July 15, 2016, which the court denied on July 20, 2016. On July 21, 2016, Appellant timely filed a notice of appeal and a voluntary concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises one issue for our review:

> WHETHER THE VERDICT WENT CONTRARY TO THE WEIGHT AND SUFFICIENCY OF THE EVIDENCE WHEN THE EVIDENCE AT TRIAL DID NOT MATCH THE ALLEGATION IN THE ORIGINAL COMPLAINT AND NO SERVICE OF THE ORDER WAS PROVEN BEYOND A REASONABLE DOUBT?

(Appellant's Brief at 6).

Our standard and scope of review in this case are as follows:

> When examining a challenge to the sufficiency of the evidence:
>
> > The standard we apply…is whether viewing all the

evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

This standard is equally applicable in cases where the evidence is circumstantial, rather than direct, provided that the combination of evidence links the accused to the crime beyond a reasonable doubt.

Additionally, the following principles apply to our review of a weight of the evidence claim:

The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the…verdict if it is so contrary to the evidence as to shock one's sense of justice.

Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited

- 4 -

to whether the trial court palpably abused its discretion in ruling on the weight claim.

***Commonwealth v. Orr***, 38 A.3d 868, 872-73 (Pa.Super. 2011) (*en banc*), *appeal denied*, 617 Pa. 637, 54 A.3d 348 (2012) (internal citations, quotation marks, and emphasis omitted).

Appellant argues he did not receive notice about the PFA hearing until after the PFA hearing had already occurred. Appellant asserts he was unaware of the PFA order. Appellant claims Victim "made up" the June 10, 2016 incident. Appellant maintains Victim's statement at the ICC hearing that Appellant grabbed both of her arms was inconsistent with her prior statement to police that Appellant grabbed Victim's throat. Appellant contends Victim's version of events is incredible where no witnesses could corroborate her testimony even though the incident allegedly occurred in a busy area with lots of people and a bar around the corner. Appellant suggests Victim fabricated the incident to keep Appellant away from his child. Appellant concludes the Commonwealth presented insufficient evidence to sustain the verdict, the verdict was against the weight of the evidence, and this Court must grant Appellant an arrest of judgment or a new trial. We disagree.

As a preliminary matter, generally, a challenge to the weight of the evidence must be preserved by a motion for a new trial. Pa.R.Crim.P. 607. The Rule provides:

**Rule 607.  Challenges to the Weight of the Evidence**

> (A)     A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:
>
>> (1)   orally, on the record, at any time before sentencing;
>>
>> (2)   by written motion at any time before sentencing; or
>>
>> (3)   in a post-sentence motion.

Pa.R.Crim.P. 607(A)(1)-(3).   "As noted in the comment to Rule 607, the purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived." ***Commonwealth v. Gillard***, 850 A.2d 1273, 1277 (Pa.Super. 2004), *appeal denied*, 581 Pa. 672, 863 A.2d 1143 (2004).   An appellant's failure to avail himself of any of the prescribed methods for presenting a weight of the evidence issue to the trial court constitutes waiver of that claim, even if the trial court responds to the claim in its Rule 1925(a) opinion. ***Commonwealth v. Burkett***, 830 A.2d 1034 (Pa.Super. 2003).   ***See also*** Pa.R.Crim.P. 720(A)(1) (explaining written post-sentence motion shall be filed no later than 10 days after imposition of sentence).

Instantly, the court sentenced Appellant on June 23, 2016.   Appellant filed an untimely post-sentence motion on July 15, 2016.   In his post-sentence motion, Appellant alleged: "[Appellant] requests the court to reconsider the matter in order to gain a hearing from witnesses on his behalf and to reduce his sentence to time served or release him from custody

altogether." (Post-Sentence Motion, filed 7/15/16, at 1). Notably, the post-sentence motion did not include a challenge to the weight of the evidence. The court denied the motion on July 20, 2016. The record is unclear whether the court denied Appellant's post-sentence motion as untimely or denied it on the merits. In any event, Appellant's weight claim is waived because he failed to preserve it in a timely filed post-sentence motion for a new trial. **See** Pa.R.Crim.P. 607; 720; **Gillard, supra**; **Burkett, supra**.

Regarding Appellant's sufficiency challenge, the ICC statute provides, in relevant part:

> **§ 6114. Contempt for violation of order or agreement**
>
> **(a) General rule.—**When the police, sheriff or the plaintiff have filed charges of indirect criminal contempt against a defendant for violation of a protection order issued under this chapter, a foreign protection order or a court-approved consent agreement, the court may hold the defendant in indirect criminal contempt and punish the defendant in accordance with the law.

23 Pa.C.S.A. § 6114(a). This Court has recently explained:

> The purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse. Where a PFA order is involved, an indirect criminal contempt charge is designed to seek punishment for violation of the protective order. A charge of indirect criminal contempt consists of a claim that a violation of an order or decree of court occurred outside the presence of the court. To establish indirect criminal contempt, the Commonwealth must prove: 1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act

constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent.

> When reviewing a contempt conviction, much reliance is given to the discretion of the trial judge. Accordingly, the appellate court is confined to a determination of whether the facts support the trial court decision. We will reverse a trial court's determination only when there has been a plain abuse of discretion.

***Commonwealth v. Lambert***, 147 A.3d 1221, 1226 (Pa.Super. 2016)

(internal citations, quotation marks, and footnote omitted).

Instantly, the trial court addressed Appellant's issue as follows:

> It is clear that, in viewing the evidence in the light most favorable to the verdict winner, there was sufficient evidence to support this court's determination. At the hearing, the Commonwealth presented evidence from the PFA hearing held on May 25, 2016. The Final Protection From Abuse Order states [Appellant] failed to appear for the May 25th 2016 hearing even though he was "properly served." The Final PFA was granted and became effective on May 25, 2016. [Appellant's] failure to appear does not absolve him from complying with the PFA order.
>
> *        *        *
>
> At the [ICC] hearing, there was testimony by the [V]ictim…as to [Appellant's] actions on June 10, 2016. Specifically, on the night of June 10, 2016, [Victim] testified [Appellant] reached into her car window and grabbed her. He continued to hit her on the side and back of the head while her 2 year old son was in the car. This court observed the bruises and commented in pronouncing sentence: "These are some of the most serious injuries I have seen in some time in a PFA case." … [Victim] further testified she subsequently passed out and was hospitalized with a severe concussion.
>
> [Appellant] in his own defense at trial testified that he did not receive notice of the PFA hearing and that the incident

on June 10, 2016 never occurred.[1]  This court considered and ultimately rejected his testimony.

> [1] [Appellant] admitted he called the courthouse the day after the PFA hearing to try to reschedule and was told the hearing had already taken place.

(Trial Court Opinion, filed December 1, 2016, at 2-3).  We see no reason to disrupt the court's decision.  **See Orr, supra**.  To the extent Appellant also complains he did not receive notice of the final PFA order, the record belies that claim.  Therefore, the Commonwealth presented sufficient evidence to sustain Appellant's conviction.  **See** 23 Pa.C.S.A. § 6114(a); **Lambert, supra**.  Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/15/2017