NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LUCAS GUGGENHEIMER | : | |
| | : | |
| Appellant | : | No. 802 WDA 2017 |

Appeal from the Judgment of Sentence May 4, 2017
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0001624-2016,
CP-02-CR-0001637-2016

BEFORE: PANELLA, P.J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY PANELLA, P.J.: FILED SEPTEMBER 24, 2019

Lucas Guggenheimer appeals from the judgment of sentence imposed on May 4, 2017, following his jury trial conviction of third degree murder, recklessly endangering another person, and two counts of carrying a firearm in public. He challenges the sufficiency of the evidence to support his third degree murder conviction. We affirm.

On October 11, 2015, Pittsburgh police officers arrived at a scene of a 911 call in the Arlington section of Pittsburgh and found the victim, Justin Granda, deceased on the sidewalk. He had been shot several times with both 9 mm and .32 caliber bullets.

While investigating the murder, officers checked Granda's cell phone records and identified Sean Sperber as a witness. Granda called Sperber on October 10, 2015, to set up a marijuana buy. Appellant and Granda met

Sperber outside of his apartment. Wary of conducting a drug deal with his wife and child present, Sperber led Appellant and Granda into his brother's apartment on the first floor of the same building.

After discussing the marijuana purchase, Appellant asked to use the bathroom. While walking to the bathroom with Sperber, Appellant pulled out a gun and pointed it at Sperber. See N.T. Trial, 01/30/17, at 252. A fight ensued during which Appellant shot Sperber's brother Seth (who came out of his bedroom when the fight started) in the upper thigh. See id. at 260-62. After both Appellant and Granda were removed from the apartment, Sean Sperber called 911. Police recovered Granda's cell phone and spent 9 mm casings from the scene.

Johanna Jones, a cab driver, testified that she first picked up Appellant (who was wearing a gray hoody) and another man, Amirae Benton. She next drove Benton and Appellant to Granda's house where she picked him up. Jones then drove the three men to the Sperber residence in the Turtle Creek area. She waited in the cab with Benton while Appellant and Granda entered the apartment. See N.T. Trial, 2/01/17, at 638-39.

After the fight with the Sperber brothers, Appellant and Granda returned to the cab hurried, out of breath, and worked up. See id. at 640. Appellant told Jones to drive them to the Arlington section of Pittsburgh. While en route, Granda complained about having lost his cell phone at the Sperber residence. See id. Jones dropped the three men off on Fernleaf Street in Arlington.

Jones's testimony was corroborated by cell phone location records that provided evidence of her travel path.

Luis Rodriguez, who lives on Arlington Avenue near where Granda's body was found, testified that on the night of the murder, he heard screaming. When he looked outside, he saw two men, one of whom was wearing a hoody, chasing another man down the street and firing guns at him. See id. at 661-63. The men were running toward his house and he saw the person being chased fall down. The two other men stood over the victim's body shooting.

After police officers arrived at the scene, they found Granda deceased on the sidewalk. Firearm experts confirmed that the 9 mm shell casings recovered at the scene were fired from the same handgun used to shoot Seth Sperber. See id. at 690-91, 699. Additionally, investigators retrieved surveillance footage from two local businesses that revealed Appellant, Granda, and Benton walking toward the location where police found Granda's body.

Appellant was arrested on October 30, 2015, and charged with homicide of Granda, shooting Seth Sperber, and related charges. This matter proceeded to a jury trial on January 26, 2017.

At trial, Appellant offered the testimony of Loretta Sizemore, an eyewitness. She testified that she saw a light blue car on Arlington Avenue before the shooting and saw a slim African American man with short hair run into the car after the shooting. See id. at 791.

Appellant also testified on his own behalf. He stated that he dealt marijuana and had contacted Granda in order to buy from Granda's associate, Sean Sperber. Appellant explained that he and another dealer, Stone, often combined money to buy larger quantities of marijuana at lower prices.[1] Appellant claimed that Stone gave him $800 toward the marijuana that Appellant planned to purchase from Sperber. See id. at 814-18.

Appellant stated that when he arrived at Sperber's residence, he attempted to purchase a half a pound of marijuana for $1600. He claimed that a fight started after Sperber tried to pass off six ounces of marijuana as a half-pound, and that although the gun fired during the struggle, he did not intend to fire it. See id. at 824-27.

After fleeing the Sperber residence, Appellant testified that he took a cab with Benton and Granda to Arlington Avenue to meet Stone. Appellant told Stone that the deal went bad and he had lost the money. See id. at 829. He claims to have given Stone the gun and promised to pay him another $400 to pay him back. He testified that Stone then accused Granda of setting up a bad deal, and started shooting at Granda. Appellant claimed to have run away when the shooting started. See id. at 830-32.

At the conclusion of trial, Appellant was convicted of third-degree murder, carrying a firearm without a license, and two counts of recklessly endangering another person. On May 4, 2017, the trial court sentenced him

_____

[1] Appellant testified that he did not know Stone's real name. See N.T. Trial, 2/01/17, at 832.

to an aggregate sentence of not less than twenty-four nor more than forty-eight years of imprisonment. Appellant did not file post-sentence motions. On June 2, 2017, he filed a timely notice of appeal.[2]

Appellant presents one question on appeal: "[Whether] the record evidence was insufficient as a matter of law to convict [Appellant] of third-degree murder in case number 1624-2016[?]" Appellant's Brief, at 3 (unnecessary capitalization and argument omitted).

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.
>
> Further, in viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the court must give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

_____

[2] Pursuant to the trial court's order, Appellant filed a timely concise statement of errors complained of on appeal. See Pa.R.A.P. 1925(b). The trial court entered its opinion on July 17, 2018. See Pa.R.A.P. 1925(a).

Commonwealth v. Harden, 103 A.3d 107, 111 (Pa. Super. 2014) (citations omitted; brackets in original). "This standard is equally applicable in cases where the evidence is circumstantial, rather than direct, provided that the combination of evidence links the accused to the crime beyond a reasonable doubt." Commonwealth v. Orr, 38 A.3d 868, 873 (Pa. Super. 2011) (en banc) (citation omitted).

Appellant does not challenge the sufficiency of the evidence to establish any of the statutory elements of third-degree murder. Rather, he avers that the evidence was insufficient to sustain his conviction because it failed to establish that he was the individual who shot Granda.[3] See Appellant's Brief, at 60-67.

> In addition to proving the statutory elements of the crimes charged beyond a reasonable doubt, the Commonwealth must also establish the identity of the defendant as the perpetrator of the crimes. Evidence of identification need not be positive and certain to sustain a conviction. As our Supreme Court has stated any indefiniteness and uncertainty in the identification testimony goes to its weight. Direct evidence of identity is, of course, not necessary and a defendant may be convicted solely on circumstantial evidence.

_____

[3] Although Appellant seeks vacation of both the third-degree murder and firearm not to be carried without a license convictions, his statement of question presented is limited to challenging the sufficiency of the evidence for third-degree murder. Therefore, we will not consider his challenge concerning the firearms not to be carried without a license conviction. See Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."). Furthermore, Appellant conceded at trial that he brought a gun to Sperber's residence and that he was not licensed to carry a firearm. See N.T. Trial, 2/01/17, at 825-26, 835.

Commonwealth v. Smyser, 195 A.3d 912, 915 (Pa. Super. 2018) (citations and internal quotation marks omitted).

Appellant concedes that the evidence offered by the Commonwealth established that he was near the murder scene; two men chased and shot at Granda, one of whom was wearing a hoody; two firearms were used to shoot Granda, one of which Appellant used to shoot Seth Sperber; and Appellant had been wearing a hoody. See Appellant's Brief, at 61-62. However, Appellant argues that the evidence equally supports the narrative he set forth in his testimony: that an individual named Stone accepted the 9 mm firearm Appellant used to shoot Seth Sperber as payment for the $800 lost in the botched marijuana deal, and then used the firearm to shoot Granda. See id. at 62-63.

Appellant contends that the evidence is insufficient because it equally supports two reasonable and mutually consistent inferences. See, e.g., Commonwealth v. Woong Knee New, 47 A.2d 450, 468 (Pa. 1946). We disagree.

In its opinion, the trial court explained:

As set forth above, the guilty verdict and the identification of [Appellant] could be based on circumstantial evidence. Based on testimony of Ms. Jones, surveillance videos and the cell phone tower data, the trial evidence established that [Appellant] and Benton were with the victim immediately prior to the shooting. The victim told [Appellant] that he . . . lost his phone at the Sperber residence. The victim's phone could have led the police to the victim, and then to [Appellant]. The Sperbers did not know the identity of [Appellant]. At the time of the shooting, two men were observed chasing the victim down the street firing gunshots

- 7 -

at the victim. All evidence pointed to the fact that the shooting was malicious and intentional. The victim was shot in the back four times and he was shot in his head four more times. Most importantly, ballistic evidence demonstrated that shortly after [Appellant] used the 9 millimeter handgun to shoot Sperber's brother in Turtle Creek, the same firearm was used to shoot and kill the victim. That the jury rejected [Appellant's] self-serving version of events is of no avail to [Appellant]. The jury was well within its province to reject this testimony. . . .

Trial Court Opinion, 7/17/18, at 12-13 (emphasis added).

Our review of the record supports the trial court's conclusion. Rather than being equally supportive, the evidence was heavily tilted towards Appellant's culpability. The evidence against Appellant included Appellant's concession that he had possessed one of the guns used to kill Granda, and had recently shot (albeit allegedly unintentionally) Seth Sperber with it, as well as eyewitness accounts describing a person dressed similarly to Appellant chasing and shooting at Granda. Against this evidence, Appellant can point only to his own self-serving testimony that he not only gave the gun to a person he could not identify by name, but that this person then proceeded to use the gun to kill Granda.

It was well within the province of the jury to choose not to credit Appellant's version of events. The evidence offered by the Commonwealth at trial was more than sufficient to support a finding that Appellant was the person who shot Granda. Appellant's challenge to the sufficiency of the evidence does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  9/24/2019