J-S20020-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| J.S. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| B.H. | : | |
| | : | |
| Appellant | : | No. 1408 MDA 2020 |

Appeal from the Order Entered September 24, 2020
In the Court of Common Pleas of Lancaster County
Civil Division at No(s): CI-20-03639

BEFORE: NICHOLS, J., KING, J., and MUSMANNO, J.

MEMORANDUM BY KING, J.:                          **FILED AUGUST 26, 2021**

Appellant, B.H., appeals from the order entered in the Lancaster County Court of Common Pleas, which found him in indirect criminal contempt of court ("ICC") for violating an order under the Protection from Abuse ("PFA") Act. We affirm.

The relevant facts and procedural history of this case are as follows. Appellant and J.S. ("Victim") share one child together, S.W.S. ("Child"), and have been involved in a highly contentious custody action. On May 18, 2020, Victim filed a *pro se* petition for a temporary PFA ("TPFA") order. In the petition, Victim alleged:

> [Appellant] chased me to my car where I was buckling [Child] in, he pinned me to the open back door screaming that I was a "bitch" and I would "pay for this" saying he's not going to be nice anymore. He repeatedly jabbed his fin[g]er in my face, hitting my nose at one point. He leaned into my face about one inch from me screaming "fuck you,

fuck you, fuck you" while [Child] sobbed hysterically crying "mom mom mom[."] His fists were clenched, his face was full of rage and bright red, I closed my eyes sure that he was going to punch me. The[n] he turned and stormed off, thank God my mom was there with me.

(PFA Petition, filed May 18, 2020, at ¶11). Based on these allegations,

[Victim's] Petition was granted and a [TPFA Order] was entered on May 18, 2020. A final hearing was scheduled for June 12, 2020. On June 11, 2020, because the parties, through counsel, requested the matter to be heard at a special listing, the hearing was continued to July 8, 2020 and the TPFA Order remained in full force and effect. On June 2[5], 2020, by agreement of the parties, the hearing was continued to August 7, 2020 and the TPFA Order continued in full force and effect. Both parties appeared for a final protection from abuse hearing on August 7, 2020 held in conjunction with a custody hearing and relocation hearing between the same parties[.] At the conclusion of the proceeding, the court found in favor of [Victim] and entered a two-year Final Protection from Abuse Order on August 7, 2020 ("FPFA Order").

On August 7, 2020, [Appellant] was charged with one count of [ICC] on Docket No. CI-20-00655 at Reference No. 20-0079 for an incident that occurred on August 5, 2020. On August 10, 2020, [Appellant] was charged with a second count of ICC on Docket No. CI-20-00655 at Reference No. 20-0078 for an incident that occurred on July 27, 2020. A hearing was scheduled for August 12, 2020 on both counts. A bench warrant was issued upon [Appellant] on August 12, 2020 for failure to appear. On September 4, 2020, upon [Appellant's] Motion, bail was reinstated and the bench warrant was vacated. On September 8, 2020, the ICC hearing was rescheduled to September 23, 2020. On September 18, 2020, [Appellant] was charged with a third count of ICC on Docket No. CI-20-00655 at Reference No. 20-0099 for incidents that occurred on August 7, 2020. The third count of ICC was scheduled to be heard on September 23, 2020 with the other two ICC counts.

(Trial Court Opinion, filed December 18, 2020, at 1-2).

The trial court further explained:

Both the TPFA, which was in effect from May 18, 2020 until August 7, 2020, and the FPFA, which became effective August 7, 2020 for a period of two (2) years, included *inter alia* the following provisions in the order:

1. Defendant shall not abuse, harass, stalk, threaten, or attempt or threaten to use physical force against any of the above persons in any place where they might be found.

[*　　*　　*]

3. Except for such contact with the minor children as may be permitted under Paragraph 5 of this order, [Appellant] is prohibited from having **ANY CONTACT** with [Victim], or any other person protected under this order either directly or indirectly, at any location, including but not limited to any contact at [Victim's] or other protected party's school, business, or place of employment…

4. Except for such contact with the minor child/ren as may be permitted under paragraph 5 of this order, [Appellant] shall not contact [Victim], or any other person protected under this order, by telephone or by any other means, including through third persons.

([TPFA] Order, 5/18/20; [FPFA], 8/7/20) (emphasis in original).

At the ICC hearing on September 23, 2020, the Commonwealth requested the [c]ourt also take judicial notice of the custody action between [Victim and Appellant] at Docket No. CI-20-00655. Counsel for [Appellant] interjected and stated "I am not sure. I don't see the relevance." The [c]ourt recognized Counsel for [Appellant's] interruption as an objection on relevance grounds. After considering the arguments of both counsel, the [c]ourt found the custody docket not relevant at that time under Pa.R.E. 401(b). The testimony presented regarding the alleged contact between [Appellant and Victim] revealed that the contact occurred through text

- 3 -

messages sent on three separate dates.

On July 27, 2020, [Appellant] sent text messages to [Victim] discussing *inter alia* his continued feelings of affection towards [Victim]. "I still love you very much[.] I miss you...[.]" "I just want to be together and raise our son as a family...." "I am the dad and I love you[.] I am sorry for everything please reconsider[.]" After reiterating that he still loves [Victim, Appellant] went on to write "[a]nyway[,] that's probably a contempt charge or something so make sure to print it out[.]" [Appellant] did discuss custody during his text messages to [Victim] on July 27, 2020, writing "I would still love to get married and raise [Child] together and both have him all the time. If[,] however[,] that is not an option[,] I need more than 4 hours in [North Carolina.]" When asked if he sent the texts to [Victim], [Appellant] responded, "I did send those texts, yes, I did" and "I believe so, yes." [Appellant] characterized his text messages to [Victim] as him "just trying to be nice to her as I'm asking her about child custody."

On August 5, 2020, [Appellant] sent additional text messages to [Victim] indicating he missed her and wished to rekindle their relationship. "I miss you everyday[.]" "I love you." "I would like to work things out between us[.]" [Appellant] also indicated "...if that's not currently a possibility[,] [he] would like to work together to be good parents...." [Appellant] also specified that "[Victim] would like the person [he is] now."

On August 7, 2020, the date of the final protection from abuse hearing, [Appellant] sent a series of text messages to [Victim] prior to the court hearing at 12:50am and 7:28am and continuing during the lunch recess at 12:44pm. In his text messages to [Victim], [Appellant] requested that [Victim] "spare [him] that [unhappy ending in court] and come to a reasonable schedule giving [him] more access to [their] son." [Appellant] continued by asking [Victim] if "hugging and making up [was] a possibility instead of arguing in court[?]"

(*Id.* at 3-5) (some internal citations omitted). Following the hearing:

[Appellant] was found guilty of ICC on all three counts and

sentenced to six (6) months of probation on Reference No. 20-0078 to be served concurrently with six (6) months of probation on Reference No. 20-0079 and consecutively with six (6) months of probation on Reference No. 20-0099 along with costs and special conditions of probation for domestic violence offenders. In addition, the original two-year FPFA Order was extended for one (1) additional year.

[Appellant] filed his timely notice of appeal on October 23, 2020. The court filed an order pursuant to Pa.R.A.P. 1925(b) on October 29, 2020 directing [Appellant] to file a concise statement of errors complained of on appeal. [Appellant] filed his concise statement of errors on November 17, 2020.

(*Id.* at 2-3).

Appellant raises the following issues on appeal:

Whether the evidence supports a conclusion that the texts sent by [Appellant to Victim] violated the Protection from Abuse Order that had been entered against him.

Did the [trial c]ourt err in finding, beyond a reasonable doubt, that Appellant intended to violate the terms of the Protection [f]rom Abuse Order.

(Appellant's Brief at 10).

Our standard and scope of review in this case are as follows:

When examining a challenge to the sufficiency of the evidence:

The standard we apply…is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding

a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

This standard is equally applicable in cases where the evidence is circumstantial, rather than direct, provided that the combination of evidence links the accused to the crime beyond a reasonable doubt.

*Commonwealth v. Orr*, 38 A.3d 868, 872-73 (Pa.Super. 2011) (*en banc*),

*appeal denied*, 617 Pa. 637, 54 A.3d 348 (2012) (internal citations, quotation

marks, and emphasis omitted).

In his issues combined, Appellant argues that he did not intend to violate

the PFA orders. Rather, he insists that he wanted to come to an agreement

with Victim about the provisions of the custody order and arrange time for

Child with both parents. Appellant acknowledges that he was not permitted

to contact Victim about anything except Child's welfare. Appellant maintains

that the text messages he sent were permissible and necessary for Child's

sake. Appellant claims the court failed to inquire about his intent in sending

the text messages. Appellant concludes that this Court should reverse the

order finding him in ICC. We disagree.

The ICC statute provides, in relevant part:

**§ 6114.  Contempt for violation of order or agreement**

**(a)   General rule.**—Where the police, sheriff or the plaintiff have filed charges of indirect criminal contempt against a defendant for violation of a protection order issued under this chapter, a foreign protection order or a court-approved consent agreement, the court may hold the defendant in indirect criminal contempt and punish the defendant in accordance with the law.

23 Pa.C.S.A. § 6114(a).  This Court has explained:

The purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse.  Where a PFA order is involved, an indirect criminal contempt charge is designed to seek punishment for violation of the protective order.  A charge of indirect criminal contempt consists of a claim that a violation of an order or decree of court occurred outside the presence of the court.  To establish indirect criminal contempt, the Commonwealth must prove: 1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent.

When reviewing a contempt conviction, much reliance is given to the discretion of the trial judge. Accordingly, the appellate court is confined to a determination of whether the facts support the trial court decision.  We will reverse a trial court's determination only when there has been a plain abuse of discretion.

*Commonwealth v. Lambert*, 147 A.3d 1221, 1226 (Pa.Super. 2016)

(internal citations, quotation marks, and footnote omitted).

Instantly, the trial court addressed Appellant's issues as follows:

There is no dispute that [Appellant] received notice of both the TPFA and FPFA Orders, having been personally served

with the TPFA on May 18, 2020 and by virtue of [Appellant's] presence in the courtroom related to the FPFA on August 7, 2020. Both the TPFA and FPFA unambiguously prohibit [Appellant] from contacting [Victim] by any means. [Appellant] readily admitted that he volitionally sent the text messages at issue to [Victim], illustrating that [Appellant] had knowledge of the possible consequences of his actions, in his July 27, 2020 text messages to [Victim], [Appellant] indicated that his text messages may constitute a contempt charge and cynically encouraged [Victim] to print them out. The foregoing demonstrates that [Appellant] knew not to communicate with [Victim], but he chose to contact her anyway. The TPFA references the current custody order between the parties, but it does not add permissible contact language between the [Appellant and Victim]. The FPFA indicates that ["Appellant] shall be permitted to contact [Victim] regarding the child's health, well-being, and to facilitate custody exchanges. All communications shall be non-abusive or non-harassing." (FPFA at ¶5). Many of [Appellant's] text messages belie an argument that the contact in question was permissible under the protection from abuse orders. The majority of the text messages outlined *supra* did not concern custody arrangements for [Child], but instead concerned [Appellant's] attempts at expressing his affections and hopes for reconciliation with [Victim]. The TPFA and FPFA Orders were sufficiently clear that such contact was not permitted.

Based upon the testimony of the witnesses and the evidence presented and weighing the credibility of the witnesses, the court found that [Appellant's] text communications to [Victim] violated the terms of the protection from abuse orders.

\* \* \*

The actions of [Appellant] demonstrated his wrongful intent. He testified that he communicates with [Victim] via text messaging. Therefore, there was a substantial certainty that his repeated acts of sending text messages to [Victim] over the course of three different days would place him in contact with [Victim] in violation of the applicable TPFA and FPFA Orders. The proximity of the August 7, 2020 violation to the final protection from abuse hearing held on the same

day additionally highlights [Appellant's] wrongful intent. He knew there was a current order of protection against him prohibiting contact, but he contacted [Victim] anyway, both prior to the hearing and during the lunch recess. … The intermingling of texts relating to custody requests does not negate the fact that several of the text messages on all three dates in question did not concern the minor child. [Appellant's] wrongful intent can be imputed in this case by virtue of the substantial certainty that his actions in sending multiple text messages to [Victim] would place him in contact with her in clear violation of both the TPFA and FPFA Orders.

In this case, the trial court believed [Victim's] version of the facts and rejected [Appellant's]. … The trial court found each and every element of an ICC beyond a reasonable doubt believing [Victim's] accounts and rejecting [Appellant's]. …

*    *    *

The court crafted a two-year protection from abuse order, allowing [Appellant] to communicate with [Victim] only as it pertains to the care and well-being of [Child]. [Appellant] was unable to constrain himself to contact regarding [Child]. The content of the text messages, the testimony of [Victim and Appellant], and the plain and unambiguous language of the TPFA and FPFA provided sufficient evidentiary support for the court to find that the Commonwealth met its burden of proving all of the elements of ICC beyond a reasonable doubt and specifically that [Appellant] possessed the wrongful intent to violate the protection orders.

(Trial Court Opinion at 6-9) (most internal citations omitted). Our review of the record supports the trial court's analysis. **See Orr, supra**. **See also** 23 Pa.C.S.A. § 6114(a); **Lambert, supra**. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 08/26/2021