J-S47023-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOSEPH WEST | |
| Appellant | No. 2498 EDA 2015 |

Appeal from the Judgment of Sentence July 13, 2015
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0006619-2013

BEFORE:  LAZARUS, J., MOULTON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY MOULTON, J.:          **FILED DECEMBER 01, 2017**

Joseph West appeals from the July 13, 2015 judgment of sentence entered in the Montgomery County Court of Common Pleas following his convictions for criminal attempt to commit burglary, conspiracy to commit burglary, and conspiracy to commit criminal trespass.[1]  We affirm.

The opinion of the Honorable Thomas P. Rogers summarized the relevant factual and procedural history of this matter as follows:

> On Tuesday, March 19, 2013, Dr. Roger Tsai and his wife were relaxing downstairs in their two-story home on Gwynedd Lea Drive in the North Wales section of Montgomery Township, Montgomery County, between 1:00 and 1:30 p.m. when they heard the doorbell ring and a knock at their front door.  (Notes of Testimony ("N.T.") Trial, 4/8/15, at 29-31; Commonwealth Exhibit C-1 Photograph of Tsai two-story home).  Believing that it was probably a

---

[1] 18 Pa.C.S. §§ 901(a), 903(a)(1), and 903(a)(1), respectively.

delivery from a carrier who would leave a package outside, they ignored the doorbell. (***Id.*** at 31). Dr. Tsai was not expecting anyone at his home at that time. (***Id.*** at 32). When the doorbell ringing and knocking persisted, and thinking it was unusual, Dr. Tsai went upstairs to look outside a window over the front entrance to see who was at their door. (***Id.***). Once there, Dr. Tsai saw two (2) African–American males that he did not recognize and had not seen before wearing dark sweatshirts at his front door entrance. (***Id.*** at 32-33).

Following a minute or two of knocking and ringing of the doorbell without getting a response, Dr. Tsai observed the two men walk away from his front door and over to a van parked across the street. (***Id.*** at 33-34). Dr. Tsai watched as the two men got into the van. Because of what had just occurred, Dr. Tsai retrieved his camera with a zoom lens and photographed the vehicle with its license plate (JFE 9210) before it drove away. (***Id.*** at 34-35; Commonwealth Exhibit C-2 Photograph of vehicle).

After the van pulled away, it drove around the block, passed by the Tsai home and parked a few houses down on the street. (***Id.***). Dr. Tsai watched as three (3) men got out of the van, crossed the street and walked toward his house. (***Id.*** at 35). Dr. Tsai took photographs of one of the men as he approached the Tsai home. (***Id.*** at 35-36; Commonwealth Exhibit C-2). As the men got closer to his home, Dr. Tsai dialed 911. (***Id.*** at 36). While Dr. Tsai was on the phone with the police, he lost sight of the men as they got very close to the front of his house. At this point he heard a loud banging noise coming from the front of his house. (***Id.*** at 36-37). He looked down to the first floor living room and noticed an open window. (***Id.*** at 37; N.T. Sentencing Hearing, 7/13/15, at 18). Since it was the middle of March and cold outside, he knew that neither he nor his wife had opened that window. (N.T. Trial 4/8/15 at 37-38). Dr. Tsai started yelling so that the men could hear him. (***Id.*** at 37). Looking out the second floor window again, he saw the three men walking away from his house and he took another photograph. (***Id.*** at 37-38; Commonwealth Exhibit C-2 Photograph of three men walking away from the Tsai home).

Montgomery Township Police Department responded to the call at 1:47 p.m. and investigated the open window on the front of the Tsai home. (N.T. Trial 4/8/15, at 40; Affidavit of Probable Cause sworn on 8/6/13). Dr. Tsai noticed pry marks on the window that had just been installed as new a few months before, indicating an attempted forced entry. (**Id.** at 38, 39). In addition, Dr. Tsai noticed that the window lock had been broken. (**Id.** at 39-40).

Montgomery Township Police Department broadcasted a description of the suspects and their vehicle to area police departments. (N.T. Sentencing at 18-19). At approximately 2:00 p.m. on March 19, 2013, a gold Dodge Caravan with license plate number JFE 9210 was reported stolen to the Philadelphia Police Department. (N.T. Sentencing at 19; Affidavit of Probable Cause). Cheltenham Township Police Department located the same gold Dodge Caravan shortly after 2:00 p.m. that day in an Aldi parking lot. (N.T. Trial 4/8/15, at 46). After securing a search warrant, a search of the Caravan by Montgomery Township Police Department netted several items, including two (2) crowbars, a screwdriver, two (2) sweatshirts, one (1) black leather Nike glove and two (2) black knit gloves. (**Id.** at 47-51; N.T. Habeas Corpus Hearing 1/8/14, Commonwealth Exhibit C-5 Receipt/Inventory). DNA testing from these items resulted in no interpretable results. (N.T. Trial 4/8/15, at 46). Fingerprint testing resulted in a match for only one person, not [West]. (**Id.**).

After showing the photographs taken by Dr. Tsai on March 19, 2013, to other law enforcement officers, police were eventually able to identify [West] as one of the men in those photographs. (**Id.**; N.T. Sentencing at 19). Montgomery Township Police Department filed a criminal complaint with an affidavit of probable cause and arrested [West] on August 15, 2013. [West] filed a petition for writ of *habeas corpus* and, after a hearing on January 8, 2014, the court found that the Commonwealth had met its burden of establishing a prima facie case. (N.T*. Habeas Corpus* Hearing 1/8/14 at 37). [West] proceeded to trial. On April 6, 2015, the Commonwealth filed a motion *in limine* to introduce [West]'s police booking photographs at trial to help prove that [West] was the person shown in Dr. Tsai's photographs approaching the Tsai home on March 19, 2013.

(Commonwealth's Motion *in Limine* filed April 6, 2015). On the morning of the first day of trial, counsel reached an agreement that resulted in the Commonwealth taking photographs of [West] that day in the courtroom outside the presence of the jury instead of using the police booking photographs. (N.T. Trial 4/8/15, at 3-4).

The Commonwealth presented the testimony of Dr. Tsai regarding the events of March 19, 2013, at his home and what Dr. Tsai personally heard, observed and photographed. (*Id.* at 29-39; Commonwealth Exhibits C-1, 2). [West] had the opportunity to test that evidence on cross examination. (*Id.* at 39-44). The Commonwealth then presented the testimony of Montgomery Township Police Officer Daniel Rose. Officer Rose testified about his execution of a search warrant on the gold Dodge Caravan and the items he recovered therein. (*Id.* at 47-52). [West] again tested the Commonwealth's evidence on cross examination. (*Id.* at 52-55). At the close of testimony, the Commonwealth introduced photographs by agreement that fairly and accurately showed what [West] looked like in the courtroom on that day. (N.T. Trial 4/8/15, at 57-58; Commonwealth Exhibit C-7).

In his opening statement and at the close of trial, Defense Counsel pointed to the lack of DNA, fingerprint and cell phone evidence as well as Dr. Tsai's failure on the witness stand to identify [West] as the person in the photograph that Dr. Tsai took, in support of Counsel's argument that the Commonwealth had not proven its case beyond a reasonable doubt. (N.T. Trial Opening Statements and Closing Arguments 4/8/15 and 4/9/15 at 8-9, 10-15). Counsel conceded that there were similarities between the individual in the photograph taken on March 19, 2013, and [West], but argued that the photographs were insufficient evidence without anything else to put him at the Tsai home or in the stolen van. (*Id.* at 14-15).

For his closing argument, Assistant District Attorney Benjamin McKenna presented a detailed, comparative analysis of the photographs taken of [West] in the courtroom with the photographs taken by Dr. Tsai on March 19, 2013. (*Id.* at 22-25). He explained that even if Dr. Tsai had identified [West] from the witness stand, the jury members would still have to weigh the evidence and come

to their own conclusion regarding the photograph taken on March 19, 2013. (*Id.* at 20-21). Using blow-ups of two of the photographs in evidence, ADA McKenna specifically pointed to the marked similarities between the two, including: the hairline, chinstrap beard, hair (including sparse spots, waves and curls), nose, lips, chin, ear, mustache, forehead, mark on the forehead and eyebrow. (*Id.* at 22-25; N.T. Trial 4/9/15 at 38-39).

As noted above, the jury found [West] guilty on one count of criminal attempt and two counts of criminal conspiracy. The court granted the Commonwealth's motion to *nol*[*le*] *pros* count 4 criminal mischief and count 5 possession of an instrument of crime. On June 5, 2015, [West] mailed a *pro se* Petition for Judgement [sic] of Acquital [sic], which the Clerk of Courts docketed on June 9, 2015. This court denied the petition on June 23, 2015. The undersigned imposed [West]'s sentence on Monday, July 13, 2015. (N.T. Sentencing Hearing 7/13/15, at 23-24). [West] did not file any post-sentence motions. Instead, [West] sent a *pro se* Petition for Post-Conviction Collateral Relief dated July 14, 2015, which the Clerk of Courts docketed on July 22, 2015. On July 15, 2015, [West] mailed a *pro se* notice of appeal, which the Clerk of Courts docketed on August 17, 2015.

The undersigned appointed the Montgomery County Public Defender's Office to represent [West] and directed [West] to file a Concise Statement of the Matters Complained of on Appeal, pursuant to Pa.R.A.P. 1925(b) ("Statement") by order dated August 20, 2015. The court granted [West]'s two requests (September 18, 2015 and December 1, 2015) for extensions to file his Statement. On September 4, 2015, this court also granted [West]'s request to withdraw his *pro se* PCRA petition without prejudice pending his direct appeal. [West] subsequently filed his Statement on December 31, 2015.

Opinion, 12/29/16, at 2-8 ("1925(a) Op.").

West raises the following issues on appeal:

I. Was the evidence insufficient to prove [West]'s guilt beyond a reasonable doubt, where the evidence was insufficient to identify [West] as the perpetrator of the charged offenses?

II. Was the evidence insufficient to establish each element of the crimes of attempt burglary and conspiracy to commit burglary beyond a reasonable doubt where, at most, the evidence and reasonable inferences only established the crime of criminal trespass?

West's Br. at 4 (answers below omitted).

Our standard of review for a claim challenging sufficiency of the evidence is well-settled:

We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.

The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact[-]finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Rodriguez*, 141 A.3d 523, 525 (Pa.Super. 2016) (quoting *Commonwealth v. Tarrach*, 42 A.3d 342, 345 (Pa.Super. 2012)).

West first claims that the evidence was insufficient to identify him as the perpetrator of the crimes committed. "[E]vidence of identification need not be positive and certain to sustain a conviction." *Commonwealth v. Orr*, 38 A.3d 868, 874 (Pa.Super. 2011) (quoting *Commonwealth v. Jones*, 954

A.2d 1194, 1197 (Pa.Super. 2008)). "[A]ny indefiniteness and uncertainty in . . . identification testimony goes to its weight." ***Id.*** (quoting ***Commonwealth v. Minnis***, 458 A.2d 231, 233 (Pa.Super. 1983)). Accordingly, "[t]he weight to be given to identification testimony is for the trier of fact." ***Commonwealth v. Whitman***, 380 A.2d 1284, 1289 (Pa.Super. 1977).

At trial, the Commonwealth admitted photographs taken by Dr. Tsai on the day of the incident into evidence. N.T., 4/8/16, at 34. Dr. Tsai described one photograph as "a picture of the one of the man [sic] that approached my house" and another photograph as "the same person, a little bit close up, different shot." ***Id.*** at 35-36. The Commonwealth also admitted, without objection, another photograph that the parties stipulated "fairly and accurately shows what [West] looks like today in court." ***Id.*** at 57. Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we conclude that there was sufficient evidence to support the identification of West as the perpetrator of the crimes. Any indefiniteness and uncertainty regarding the photographic evidence admitted goes to its weight, which is a question for the jury as fact-finder.[2]

West next challenges the sufficiency of the evidence supporting his convictions for attempted burglary and conspiracy to commit burglary.

_____

[2] West does not challenge the weight of the evidence on appeal.

Specifically, West contends that there was no evidence that any of the intruders intended to commit a crime inside the home.

"At both common law and statutory law, the crime of burglary or attempted burglary encompasses the element of intent to commit a felony or any qualified crime within the burglarized premises." ***Commonwealth v. Wilamowski***, 633 A.2d 141, 142 (Pa. 1993). "[I]ntent . . . can be inferred from the circumstantial evidence surrounding the incident." ***Id.*** We have discussed the elements of criminal conspiracy as follows:

> A conviction for criminal conspiracy, 18 Pa.C.S.[] § 903, is sustained where the Commonwealth establishes that the defendant entered an agreement to commit or aid in an unlawful act with another person or persons with a shared criminal intent and an overt act was done in furtherance of the conspiracy.

***Commonwealth v. Lambert***, 795 A.2d 1010, 1016 (Pa.Super. 2002).

The trial court found that:

> Instantly, the Commonwealth presented evidence that two men Dr. Tsai did not know and did not invite to his home came to his front door on March 19, 2013, rang the doorbell and knocked several times before walking away, having received no response. One logical inference is that those two men were casing the home. The two men got into a Dodge Caravan, which then drove around the block and parked further away on the street from the Tsai home before three men got out. Those three men then approached the Tsai home. Dr. Tsai took close-up photographs of one of those three men. While Dr. Tsai was upstairs and lost visual contact of the men because they were close to his house, he heard a banging noise on the front of his house. When he looked down into the first floor living area, Dr. Tsai saw the curtains on one window blowing into the house and realized that the window had been opened. Since it was mid-March and cold outside, he knew that neither he nor his

- 8 -

wife had opened that window.  After Dr. Tsai yelled loudly, the three men then walked away from the Tsai home and got back into the Dodge Caravan.  Dr. Tsai testified that the window and frame were new and had just been installed in their home a few months earlier and now had pry marks on it and a broken lock.  Shortly thereafter, police officers found two crowbars, a screwdriver, two black sweatshirts and gloves inside of that same Dodge Caravan, which had been reported stolen after the attempted burglary. Police officers later identified [West] as the person they recognized in Dr. Tsai's photograph.

One logical inference is that after receiving no response to their initial knocking and ringing of the doorbell to see if anyone was home, the three men moved the van farther away from the Tsai home before attempting to enter it so that no one would later connect the vehicle with the Tsai home.  Another logical inference is that at least one of these three men used a crowbar to break the lock and pry open the downstairs window of the Tsai home with the intent to gain entry for an illegal purpose.  Once they realized that someone was actually inside the house, the three men left.  It is not necessarily surprising that they walked away, rather than ran, so as to avoid drawing attention to themselves and raising suspicion by anyone else in the neighborhood that may have been home at the time.  The Commonwealth established sufficient evidence at trial to sustain a conviction for attempted burglary, criminal conspiracy to commit burglary and criminal conspiracy to commit trespass.[3]

1925(a) Op. at 14-15.  Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we agree with the trial court's conclusion that there was sufficient evidence to support West's convictions for attempted burglary and conspiracy to commit burglary, including that West intended to commit a crime within the burglarized premises.

---

[3] West does not challenge his conviction for conspiracy to commit trespass on appeal.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/1/2017