J-S36035-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVION ANTHONY LLOYD SINCLAIR | : | |
| | : | |
| Appellant | : | No. 286 WDA 2020 |

Appeal from the Judgment of Sentence Entered December 7, 2018
In the Court of Common Pleas of Mercer County Criminal Division at
No(s):  CP-43-CR-0000655-2018

BEFORE:  OLSON, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    FILED AUGUST 17, 2020

Davion Anthony Lloyd Sinclair (Sinclair) appeals from the December 7, 2018 judgment of sentence imposed by the Court of Common Pleas of Mercer County (trial court) following his convictions for burglary, theft by unlawful taking and criminal mischief.[1]  Sinclair challenges the sufficiency of the evidence to support his convictions for burglary and theft by unlawful taking. After careful review, we affirm.

We glean the following facts from the certified record.  While on patrol at approximately 2:30 a.m. on September 16, 2017, Patrolman Robert A. Steese (Patrolman Steese) of the Grove City Police Department observed a

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3502(a)(4), 3921(a), 3304(a)(1).

vehicle parked at the Ivan Drive Self Storage. An individual was standing inside one of the nearby storage units. Because it was unusual for anyone to access the self-storage units at this hour, Patrolman Steese approached the individual to investigate. When Patrolman Steese asked why the individual was accessing the storage unit at that hour, the individual said the unit belonged to a relative who had given him permission to store items there. The individual had a pair of bolt cutters and had cut the lock off the door to the storage unit but told Patrolman Steese that he had brought a new lock to put on the door when he was done.

Patrolman Steese asked the individual for identification and was given a drivers' license with the name Davion Sinclair. Patrolman Steese confirmed that the photo on the license matched the individual in the storage unit and then ran the license information for outstanding warrants. After receiving confirmation that there were no outstanding warrants for Sinclair, Patrolman Steese returned his license and left the area. The encounter lasted approximately seven minutes.

Patrolman Steese then parked in a parking lot outside of the business and waited for Sinclair to leave. He observed the vehicle he had seen in the business leave the parking lot and attempted to follow it. The vehicle proceeded to leave the area at a high rate of speed and Patrolman Steese was unable to follow it. In the meantime, his partner verified that Sinclair had put a new lock on the door to the storage unit. Because he believed Sinclair's

explanation about using a relative's storage unit was plausible, Patrolman Steese did not take any additional action at that time.

Within a few days after these events, Keith Stoughton (Stoughton), the manager of Ivan Drive Self Storage, noticed that several of the storage units at the property were missing locks. One of the units that was missing a lock was rented by Jill Collers (Collers). Stoughton contacted Collers to ask if she had intended to vacate the unit or if she had removed the lock, and she said she did not know why the lock had been removed. Collers rented two units and then came to the property to inspect her storage units. She found one was missing a lock and the other had a different lock than the one she had put on the unit originally. She asked Stoughton to cut the new lock off of her unit. After inspecting the contents of her storage units, Collers determined that several items were missing, including two toolboxes, a hand saw, a leather jacket and a box of DVDs. Other items in the storage unit were damaged.

Collers reported the events to the Grove City Police Department. Upon receiving the report, Patrolman Steese determined one of Collers' storage units was the one where he had encountered Sinclair shortly before the reported theft. Collers said that she did not know Sinclair and had not given him permission to enter the storage units. No one else had a key to the storage units. She estimated that the value of stolen and damaged items was between $300 and $400. None of the items were recovered.

Sinclair was subsequently charged with burglary, theft by unlawful taking and criminal mischief and he proceeded to a non-jury trial on September 19, 2018. At trial, Sinclair argued that he had lost his drivers' license shortly before the burglary and had been issued a new license. He contended that another individual had found his license and provided it to Patrolman Steese during their interaction.

At trial, Patrolman Steese identified Sinclair as the individual he had spoken to at the self-storage units on the night in question. He independently recalled Sinclair from their conversation and he also confirmed that Sinclair matched the photo on the drivers' license and in Sinclair's driver history. On cross-examination, Patrolman Steese viewed Sinclair's full driver history and agreed that Sinclair's drivers' license had been reissued several months before the incident. The original license had been issued in 2015 and it was reissued in 2017, but the driver history did not include the reason that the license was reissued at that time. Patrolman Steese also conceded that he had never met Sinclair prior to the night in question, that he did not look into the registration information for the vehicle that had been parked at the storage units, and that he did not attempt to confirm the name of the renter on that night.

At the close of the hearing, the trial court found Sinclair guilty of all charges. On December 7, 2018, the trial court sentenced Sinclair to an aggregate of 60 months' probation. Sinclair did not initially file an appeal from his judgment of sentence, but following a timely petition pursuant to the Post-

Conviction Relief Act,[2] the trial court reinstated his direct appeal rights. Sinclair filed a timely notice of appeal and Sinclair and the trial court have complied with Pa.R.A.P. 1925.

On appeal, Sinclair challenges the sufficiency of the evidence to support his convictions for burglary and theft by unlawful taking.[3] He contends that the Commonwealth failed to prove beyond a reasonable doubt that he was the individual that Patrolman Steese encountered at the storage units in the early morning hours of September 16, 2017. He argues that the evidence is

_____

[2] 42 Pa.C.S. § 9541 et seq.

[3] Our standard of review is well-settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [this] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. Lopez, 57 A.3d 74, 79 (Pa. Super. 2012) (citation omitted).

insufficient to establish his identity as the perpetrator of the burglary and theft because Patrolman Steese did not ask him for his name, investigate the registered owner of the vehicle that was parked at the storage units, or ask for additional forms of identification after looking at the individual's drivers' license. He contends that Patrolman Steese was not familiar with the person he encountered that night and that he only interacted with the perpetrator for seven minutes, so his identification of Sinclair was insufficient to support the verdict. We disagree.

While "[e]vidence of identification need not be positive and certain," there must nonetheless be sufficient evidence to establish beyond a reasonable doubt that the defendant was the perpetrator of the crime. Commonwealth v. Orr, 38 A.3d 868, 874 (Pa. Super. 2011) (en banc). In evaluating the sufficiency of the evidence to support an identification,

> the court should consider the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of [his or her] prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. The opportunity of the witness to view the actor at the time of the crime is the key factor in the totality of the circumstances analysis.

Com. v. Valentine, 101 A.3d 801, 806 (Pa. Super. 2014) (citation omitted). When evaluating the credibility of a witness's identification of the perpetrator, the fact-finder is entitled to believe all, part or none of the evidence presented. Lopez, supra.

Here, the evidence was sufficient to support the trial court's factual finding that Sinclair was the perpetrator of the burglary and theft at the storage units. Patrolman Steese testified that when he encountered the individual in Collers' storage unit at 2:30 a.m., he asked for identification. The perpetrator provided a drivers' license identifying himself as Sinclair, and Patrolman Steese verified that the photo on the license matched the individual who had provided it. Patrolmen Steese spoke with Sinclair for approximately seven minutes while verifying his identity and he testified that the self-storage units were in a well-lit area. He took note of the name on the license and asked dispatch to determine whether there were any outstanding warrants for Sinclair before he left the scene. Patrolman Steese also viewed Sinclair's drivers' license photo, obtained from PennDOT records before trial, and again confirmed that the photo matched the person he encountered in the storage units. Finally, at trial, Patrolman Steese testified that he could independently recall the interaction and that he was certain that Sinclair was the individual he spoke to on the night in question. The trial court, sitting as fact-finder, was entitled to credit this testimony and determine that Sinclair was the individual who committed the burglary and theft at Collers' storage units. Viewing the evidence in the light most favorable to the Commonwealth, the evidence was sufficient to establish beyond a reasonable doubt that Sinclair was the perpetrator of the crime.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/17/2020