**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
v.   :
  :
  :
JARYN WARREN   :
  :
Appellant   :   No. 2544 EDA 2019

Appeal from the Judgment of Sentence Entered March 15, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007760-2016

BEFORE:   DUBOW, J., MURRAY, J., and STEVENS, P.J.E.[1*]

MEMORANDUM BY DUBOW, J.:         Filed: September 1, 2020

Appellant, Jaryn Warren, appeals from the Judgment of Sentence entered by the Philadelphia Court of Common Pleas following his convictions after a bench trial of Aggravated Assault, Robbery, Conspiracy to Commit Robbery, Theft by Unlawful Taking, Possessing Instruments of Crime, and Simple Assault.[2] After careful review, we affirm.

We glean the following facts and history of this case from the trial court's Opinion and the certified record. *See* Trial Ct. Op., filed 1/21/20. On April 27, 2016, Appellant and three other men attacked and robbed Eric Schingen

---

[1*] Former Justice specially assigned to the Superior Court.

[2] 18 Pa.C.S. §§ 2702(a), 3701(a)(1)(ii), 903, 3921(a), 907(a), and 2701(a), respectively.

("Victim") at the intersection of Frankford Ave and Dyre Street in Philadelphia. They struck the Victim from behind, then punched and kicked him before one of the men put a gun to his face. The assailants stole a bottle of Xanax pills, a cell phone, jewelry, and around fifty dollars from the Victim.

Steven Blackiston witnessed the assault and robbery from his car and one of the assailants came up to Mr. Blackiston's car and pointed a gun at him. The assailants then fled. Mr. Blackiston drove around the block, called 911 and then returned to help the Victim.

Police officers arrived shortly thereafter and one of the residents of the neighborhood and the Victim both told the officers that they saw the four assailants running toward a specific house. Mr. Blackiston gave the officers a description of the men and their clothing. The Victim gave Officer Vitaley St. Onge a cell phone that the Victim found near him after the assault.

While approaching the house, which was abandoned, Officer Matthew Winscom heard footsteps coming from the roof and saw two men attempting to flee from a third-story window. He instructed the men to go back inside the house. Officers St. Onge and Winscom then entered the house, where they found Appellant and Montgomery in different bedrooms.

The police immediately arrested Appellant and Montgomery and placed them in the back seat of a police car. The Victim and Mr. Blackiston then identified Appellant and Montgomery as the assailants based on their clothing. This identification occurred about 15 minutes after the assailants committed

the crime. Additionally, Mr. Blackiston identified Montgomery as the man who pointed a gun at him as he watched the assault from his car. In the house, the officers located the Victim's cell phone in a toilet and a handgun under the bathtub.

Police officers pursued the other two assailants to a nearby apartment where they recovered the Victim's prescription pill bottle. Police officers placed those two men in the back of their police vehicle and the Victim and Mr. Blackiston identified them as the other two of the four assailants.

While Officer St. Onge transported Appellant and Montgomery to the police station, the cell phone that the Victim had found at the scene rang. Montgomery asked from the back seat if the officer could go into the phone to retrieve his girlfriend's phone number. At the police station, Montgomery gave the police officers the code to unlock the phone.

The Commonwealth charged the Appellant and the other three men with the above crimes.

The case proceeded to a joint bench trial on January 3, 2018. The Victim testified about the extent and severity of the assault, stating that three or four men attacked him from behind, knocking him to the ground where they hit him with a gun, punched and kicked him, and stole his possessions. He also testified that his identification of Appellant at the scene was based on Appellant's clothing and seeing Appellant walk out of the house into which he had fled.

The Victim, however, also testified he was not good with faces, that he did not get a good look at their faces at the time of the assault because he was in the fetal position, and that he could not identify any of the defendants at trial as his assailants or remember anything about his assailants except that they were Black men. The Victim also testified that he was intoxicated on the day of the assault, he was unsure how many men assaulted him, could not recall how many men he identified in the back of the police vehicles, and could not recall if one of them had been the gunman.

Officers Winscom, St. Onge, and Austin testified regarding their investigation. Officer Winscom testified that once the assailants were apprehended, the Victim and Mr. Blackiston identified them.[3] He also testified regarding the recovery of the Victim's cellphone and the handgun in the abandoned home where he found Appellant.

Officer St. Onge testified that he was present when the Victim and Blackiston identified Appellant and Montgomery after they had been put in the police vehicle. He also testified regarding Montgomery's cell phone that the Victim had handed him after the assault and its ringing while under the police vehicle's dashboard while transporting Appellant and Montgomery to the police station.

---

[3] Mr. Blackiston was not called to testify at trial.

Officer Austin testified that when he arrived at the scene of the crime he spoke with the Victim, who told him that four Black males, one with a handgun, dressed in all gray assaulted him.

Immediately after the trial, the court convicted Appellant of Robbery, Aggravated Assault, Conspiracy to Commit Robbery, Theft by Unlawful Taking, Possessing an Instrument of Crime and Simple Assault. On March 15, 2018, the Court sentenced Appellant to an aggregate term of five to eight years' incarceration, to be followed by five years' probation.

Appellant filed a Post Sentence Motion, which the court denied on July 24, 2018. Appellant did not immediately appeal, but after successful litigation of a PCRA[4] petition, Appellant filed a timely notice of appeal *nunc pro tunc*. Both Appellant and the court complied with Pa.R.A.P. 1925.

**Issues**

1. Is the evidence legally sufficient to support the convictions of [A]ppellant?

2. Is the verdict of guilty against the weight of the evidence and so contrary to the evidence that it shocks one's sense of justice under the circumstances of this case?

Appellant's Br. at 7.[5]

**Sufficiency of the Evidence**

---

[4] Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-46.

[5] In his Rule 1925(b) Statement, Appellant only challenged Victim's identification of him as one of the assailants.

In averring the evidence was insufficient to support his convictions, Appellant does not challenge any of the statutory elements of his crimes. Rather, he challenges only the evidence supporting his identification as one of the assailants who robbed The Victim, contending that the testimony from Officer St. Onge and The Victim was "so vague . . . and inconsistent . . . that the conviction cannot stand."  Appellant's Br. at 23-24.  He also asserts that he was merely present at the scene of the crime, which standing alone does not support the conviction that he committed the robbery.  *Id*. at 23, 36.

"A claim challenging the sufficiency of the evidence is a question of law." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). "We review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Miller*, 172 A.3d 632, 640 (Pa. Super. 2017) (internal quotation marks and citation omitted).

"Further a conviction may be sustained wholly on circumstantial evidence, and the trier of fact-while passing on the credibility of the witnesses and the weight of the evidence--is free to believe all, part, or none of the evidence." *Id*. (citation omitted). "In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder." *Id*. (citation omitted).

With respect to the issue of identification as the basis for challenges to the sufficiency of the evidence supporting a conviction,

> our courts have held that evidence of identification needn't be positive and certain in order to convict, although any indefiniteness and uncertainty in the identification testimony goes to its weight. Similarly, although identification based solely on common items of clothing and general physical characteristics is insufficient to support a conviction, such evidence may be considered to establish identity along with other circumstances and the proffered identification testimony.

*Commonwealth v. Minnis*, 458 A.2d 231, 233 (Pa. Super. 1983) (internal punctuation and citations omitted).

In addition, a victim's identification of an assailant within minutes of the crime is a significant factor to be considered as part of the totality of the evidence. *Commonwealth v. Orr*, 38 A.3d 868, 871, 874 (Pa. Super. 2011).

Here, in addressing Appellant's claim that the identity evidence was insufficient to support his conviction, the trial court emphasized that the Victim identified the four assailants at the scene of the crime very shortly after its commission. The court also emphasized the evidence showing that the police officers discovered Appellant in the abandoned home to which the Victim and bystanders saw all four assailants flee, and where the police also found both the Victim's cell phone and a handgun. Tr. Ct. Op. at 6. The court also noted that two of the assailants ran from the police and one of them had the Victim's pill bottle in his possession. *Id*. The trial court weighed the evidence presented, including the testimony of the police officers and the Victim, and

concluded that the Commonwealth had proven that Appellant participated in the commission of the crimes. ***Id***.

Our *de novo* review of the record, viewed in the light most favorable to the Commonwealth, supports the court's conclusion. The evidence showed that police officers found the Victim's cell phone in the house into which Appellant had fled, the Victim found Montgomery's cell phone on the ground after the assault, and police officers found co-defendant Montgomery in the same house as Appellant. Combined with the Victim's identification of Appellant immediately after the crime as one of the assailants, these facts, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to support the conclusion that Appellant was one of the assailants. ***See*** N.T., 1/3/18, at 21, 47-48, 50. 62-69, 105-06, 139-43, 147.

Moreover, as noted above, discrepancies in testimony regarding identification are factors pertaining to the weight given the evidence. ***Commonwealth v. DeJesus***, 860 A.2d 102, 107 (Pa. 2004). Although Appellant challenges the sufficiency of the evidence underlying the robbery conviction, his argument consists primarily of a recitation of the testimony presented at trial that he contends is inconsistent and unreliable. Appellant's Br. at 24-33. This is actually a challenge to the weight of the evidence. ***See***, ***e.g.***, ***Commonwealth v. Cain***, 906 A.2d 1242, 1245 (Pa. Super. 2006) (denying sufficiency challenge where it was based on the fact that two witnesses displayed uncertainty at trial as to the appellant's identity after

having made previous positive identification). We address Appellant's weight challenge below.

**<u>Weight of the Evidence</u>**

Appellant next claims that because of the discrepancy between the Victim's statements made at the scene of the crime, at the hospital, before trial, and at trial, "the verdict is so contrary to the evidence as to shock one's sense of justice." Appellant's Br. at 48-50. He also contends that the lower court "improperly ascrib[ed] greater weight to some evidence . . . than to all of the remaining evidence . . ." and, by doing so, "the verdict denies justice to [Appellant]." *Id*. at 50.

When considering challenges to the weight of the evidence, courts apply the following principles. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015) (quotation marks and citation omitted). Resolving contradictory testimony and questions of credibility are matters for the finder of fact. *Commonwealth v. Hopkins*, 747 A.2d 910, 917 (Pa. Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact. *Talbert*, *supra* at 546.

Further, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the appellant's post sentence motion requesting a new trial based on the weight of the evidence. *Id.* at 545-46.

This Court does not review the underlying question of whether the verdict is against the weight of the evidence. *Id*. "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is (or is not) against the weight of the evidence." *Id*. at 546 (citation omitted). "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." *Id*. (citation omitted).

Additionally, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Id*. (internal quotation marks and citation omitted). As our Supreme Court has made clear, reversal is only appropriate "where the facts and inferences disclose a palpable abuse of discretion[.]" *Commonwealth v. Morales*, 91 A.3d 80, 91 (Pa. 2014) (citations and emphasis omitted).

Appellant is asking this Court to reweigh the victim's conflicting statements and the testimony presented at trial. We cannot and will not do so. In addition, the verdict does not shock the conscience of this Court and we discern no abuse of discretion in the trial court's denial of Appellant's Post Sentence Motion. Accordingly, this claim fails.

Because we find no merit in either of the issues raised by Appellant, we affirm the Judgment of Sentence.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/1/20