J-S32037-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TURRELL M. BOWMAR-SWEET | : | |
| | : | |
| Appellant | : | No. 429 MDA 2022 |

Appeal from the Judgment of Sentence Entered February 17, 2022
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0000784-2021

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and LAZARUS, J.

MEMORANDUM BY LAZARUS, J.:　　　　　**FILED: DECEMBER 19, 2022**

Turrell Bowmar-Sweet appeals from the judgment of sentence, entered in the Court of Common Pleas of Dauphin County, after he was convicted of possession with intent to manufacture or deliver (PWID).[1]  After review, we affirm.

On July 29, 2019, Vice Detective Nicholas Ishman from the City of Harrisburg Police Bureau contacted a confidential informant (CI)[2] to set up a "controlled buy."  N.T. Jury Trial, 12/8/21, at 22.  The CI informed Detective Ishman that the target would be an individual named Turrell Sweet, known as

---

[1] 35 P.S. § 780-113(a)(30).

[2] Detective Ishman testified that the CI started working with the police after the CI's friend died of a drug overdose.  The CI felt an obligation to help.  N.T. Jury Trial, 12/8/21, at 47.  The CI is a heroin user, has never been charged with any crime, has aided in prior investigations with Detective Ishman, and has always been reliable.  ***Id.*** at 46.

"Face." *Id.* at 29-30. While in Detective Ishman's presence, the CI called Bowmar-Sweet and ordered a bundle (10 bags) of heroin. *Id.* at 31-32. Detective Ishman contacted Detective Shelby Day, employed by the Swatara Police Department and assigned to the Dauphin County Drug Task Force, to assist in the transaction. *Id.* at 22, 30.

Detective Ishman showed Detective Day a picture of Bowmar-Sweet, *id.* at 72, and Detective Day searched the CI for contraband and illegal drugs. *Id.* at 33. Following a negative search of the CI, Detective Day drove herself and the CI in an unmarked police vehicle to the meeting location, the parking lot of Beer King, located on the 600 Block of Division Street in Harrisburg. *Id.* at 73. On the way to Beer King, Bowmar-Sweet advised the CI that only half a bundle of heroin (5 bags) was available to purchase and that the new purchase price would be $25. *Id.* at 74. Thereafter, Detective Day and the CI pulled over to meet with Detective Ishman, who issued the correct amount of cash. *Id.* at 74.

Upon arriving in the Beer King parking lot, the CI called Bowmar-Sweet, who requested that the CI pull into an alleyway due to his concern about cameras in the parking lot. *Id.* at 76, 82. Detective Day testified that Bowmar-Sweet arrived at the unmarked vehicle and entered the passenger side rear door. *Id.* at 76-77. Thereafter, the CI and Bowmar-Sweet exchanged money for heroin, which had been placed "inside a kind of paper towel napkin." *Id.* at 82, 85. The parties stipulated the substance was heroin. *Id.* at 43, 85. The transaction took less than ten seconds. *Id.* at 85.

Surveillance photographs were taken during the controlled buy. ***See*** Commonwealth Exhibits 2-6.

Following the transaction, Detective Day and the CI met Detective Ishman[3] at a prearranged location. Detective Day gave Detective Ishman the drugs purchase from Bowmer-Sweet and the CI was searched again for drugs, money or drug paraphernalia; the search was negative. ***Id.*** at 39.

On February 20, 2020, Bowmar-Sweet was charged with PWID and criminal use of a communication facility.[4] A jury trial was held on December 8, 2021, after which Bowmar-Sweet was found guilty of PWID.[5] The court deferred sentencing and ordered a pre-sentence investigation (PSI) report. On February 17, 2022, Bowmar-Sweet was sentenced to two to four years' incarceration, followed by five years of probation. Bowmar-Sweet filed a timely notice of appeal on March 8, 2022. Both Bowmar-Sweet and the trial court have complied with Pa.R.A.P. 1925. Bowmar-Sweet raises the following issues for our review:

1. Whether the evidence was sufficient to show that []Bowmar-Sweet possessed with the intent to deliver heroin, when the photographic evidence was not clear, and the [CI] did not testify?

---

[3] During the transaction, Detective Ishman was parked about a block away. N.T. Jury Trial, ***supra*** at 34.

[4] 18 Pa.C.S.A. § 7512.

[5] The Commonwealth withdrew the criminal use of a communication facility charge.

2. Whether the trial court erred in not providing the missing person jury instruction because the record lacks any claim, outside of a generic safety reason, that the informant could not be provided, particularly when the undercover officer who was with the [CI] during the drug transaction also testified?

Bowmar-Sweet first raises a challenge to the sufficiency of the evidence. Our standard of review regarding challenges to the sufficiency of evidence are well-settled:

> [W]e evaluate the record in the light most favorable to the Commonwealth as verdict winner, giving it the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Any doubt about the defendant's guilt is to be resolved by the fact-finder unless the evidence is so weak and inconclusive that, as matter of law, no probability of fact can be drawn from the combined circumstances. Additionally, the Commonwealth may sustain its burden solely by means of circumstantial evidence.

*Commonwealth v. Lake*, 281 A.3d 341, 346 (Pa. Super. 2022) (citations and quotations omitted).

"In applying the above test, the entire record must be evaluated[,] and all evidence actually received considered. [T]he trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part, or none of the evidence." *Commonwealth v. Orr*, 38 A.3d 868, 872-73 (Pa. Super. 2011). Additionally, facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. *Id.* at 872.

Further, to sustain a conviction, evidence of identification need not be positive and certain, and any indefiniteness or uncertainty in the identification

testimony goes to its weight. ***Commonwealth v. Minnis***, 458 A.2d 213, 234 (Pa. Super. 1983). "[A]lthough identification based solely on common items of clothing and general physical characteristics is insufficient to support a conviction, such evidence may be considered to establish identity along with other circumstances and the proffered identification testimony." ***Id.*** at 233 (citations omitted).

Here, Bowmar-Sweet contends that the Commonwealth failed to identify him as the alleged dealer and, therefore, failed to prove that he constructively possessed heroin. Appellant's Brief, at 16. Specifically, Bowmar-Sweet claims that the surveillance photographs merely show his general proximity to the buy location, which is insufficient to prove his identity. ***Id.*** Additionally, he argues the photographic evidence is blurred where "[The] photographs [are] so indistinct that it is [the] equivalent of a general description of any black man, walking across a local retail parking lot, wearing a hat which casts a shadow against his face." ***Id.*** This claim is meritless.

The crime of PWID is defined in the Crimes Code as follows: "[T]he manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering, or possessing with intent to deliver, a counterfeit controlled substance." ***See*** 35 P.S. § 780-113(a)(30).

To prove PWID, the Commonwealth must prove either actual or constructive possession. ***Commonwealth v. Macolino***, 469 A.2d 132, 134

(Pa. 1983).  "Constructive possession [is] the ability to exercise conscious dominion over the illegal substance[, along with] the power to control the contraband and the intent to exercise that control."  *Id.*  The intent to exercise conscious dominion can be inferred from the totality of the circumstances.  *Id.*

Instantly, a reliable CI had informed Detective Ishman that he could purchase heroin from a male known as "Face," whose name was "Turrell Sweet."  N.T. Jury Trial, *supra*, at 46, 72.  Detective Ishman heard the CI call the target to arrange the purchase.  *Id.* at 31.  Detective Ishman's testimony connects this phone call to the individual present at the buy location.  *See id.* at 102 (Detective Ishman testifying, "In this case clearly we spoke to somebody on the phone who met us at the exact location we agreed upon with the exact amount of drugs we agreed upon, so I think it was pretty safe to infer from that that our defendant was using that phone.").

Moreover, Detective Day testified that she was presented with a picture of Bowmar-Sweet prior to the transaction, *id.* at 73, she was present in the car where the transaction occurred, and she positively identified the target as Bowmar-Sweet.  *Id.* at 96 (Detective Day testifying, "I identified [Bowmar-Sweet] on the day of the transaction.").  *Id.*  Detective Day's identification is based on more than general physical characteristics where she testified that, "[t]he defendant [had] very distinctive [facial] markings [], which [she] could clearly positively identify to be [Bowmar-Sweet.]"  *Id.* at 77; *see Minnis*, *supra* at 233.  This testimony is supported by surveillance photographs.  *See* Commonwealth Exhibits 2-6.  Indeed, describing Commonwealth Exhibit 4,

Detective Day testified that "you can see the discoloration that is evident on his face." N.T. Jury Trial, **supra** at 80.

We agree with the trial court that the jury, having heard the detective's testimony and viewed the surveillance photographs, could reasonably have inferred that Bowmar-Sweet was the target of the controlled buy and that he intentionally or knowingly possessed heroin with an intent to deliver that substance. **See** Trial Court Opinion, 5/2/22, at 5-7.

Next, Bowmar-Sweet argues that the trial court erred in not providing a missing person jury instruction because the Commonwealth failed to produce a material witness—namely the CI. Appellant's Brief, at 26. Specifically, Bowmar-Sweet contends that the CI is only available to the Commonwealth and that the CI's testimony would not be merely cumulative because the informant was the person who initiated this operation. Bowmar-Sweet is entitled to no relief.

Our standard of review regarding a trial court's jury instructions is whether the trial court abused its discretion or inaccurately stated the law. **See Commonwealth v. Antidormi,** 84 A.3d 736, 754 (Pa. Super. 2014). "A trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law clearly, adequately, and accurately presented to the jury for its consideration." **Id.**

This Court has explained the "missing witness" adverse inference rule as follows:

> When a potential witness is available only to one of the parties to a trial, and it appears this witness has special information material to the issue, and this person's testimony would not merely be cumulative, then if such party does not produce the testimony of this witness, the jury may draw an inference that it would have been unfavorable.

*Commonwealth v. Evans*, 644 A.2d 570, 573 (Pa. Super. 1995). *Evans* lists circumstances where a trial court may properly refuse to provide a missing person instruction such as when "[t]he testimony of such a witness is comparatively unimportant, cumulative, or inferior to that already presented." *Id.*

Although we agree that the CI is only available to the Commonwealth,[6] a review of the record confirms the trial court's determination that the CI's testimony would have been cumulative. Trial Court Opinion, *supra* at 8-9. In *Commonwealth v. Payne*, 656 A.2d 77, 80 (Pa. 1994), our Supreme Court found that the testimony of a CI would not be cumulative where the state trooper, who made an undercover purchase of drugs in the company of the CI, was the only witness for the prosecution. Here, unlike in *Payne*, the Commonwealth's evidence consisted of two witnesses *and* surveillance photographs. Thus, the CI's testimony would have been cumulative to

---

[6] In *Evans*, this Court held that "merely because a [CI] has knowledge of a defendant's nickname and whereabouts does not necessarily compel the conclusion that the defendant has any knowledge of or can reach the informant in order to subpoena the informant as a witness." *Id.* at 555. Here, the CI knew Bowmar-Sweet's nickname was "Face" and how to contact him. N.T. Jury Trial, *supra* at 29. Additionally, following the controlled buy, the police waited to arrest the target in order to protect the identity of the CI. *Id.* at 28. As such, Bowmar-Sweet is unlikely to know who the informant is and, thus, would be unable to contact the informant.

Detective Ishman's testimony regarding the initial phone call to Bowmar-Sweet and cumulative to Detective Day's testimony regarding the transaction. Additionally, Detective Day's identification testimony was supported by surveillance photos. *See* Commonwealth Exhibits 2-6. Indeed, "where other corroboration of the officer's testimony exists, disclosure of the informant's identity is . . . not necessarily required." *Id.* at 79.

Further, Bowmar-Sweet's claim of mistaken identity based on conflicting phone numbers on various police reports[7] is unavailing. Detective Ishman testified that the CI provided the telephone number that the CI used to contact Bowmar-Sweet, which is also the phone number on the incident report. *See* Commonwealth Exhibit 12. The number is also listed as Bowmar-Sweet's telephone number in the PSI. *See* Pre-Sentencing Investigation Report, 1/25/22, at 1.

In light of the foregoing, we conclude that the evidence, including the reasonable inferences to be drawn therefrom, was sufficient to allow the jury to find Bowmar-Sweet guilty of PWID. *Lake*, *supra*. Moreover, due to its cumulative nature, we find that the trial court did not err in failing to give a missing witness instruction. *Evans*, *supra*.

Judgment of sentence affirmed.

---

[7] Although Detective Ishman was asked to read the conflicting phone number from a document, Attorney McNulty does not identify the document on the record. N.T. Jury Trial, *supra* at 51. Further, Detective Ishman testified that the conflicting number was automatically populated from a previous incident involving Bowmar-Sweet and that is it common for individuals in the drug trade to have more than one phone number. *Id.* at 104.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/19/2022