J-S35036-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDRZEJ MIECKOWSKI | : | |
| | : | |
| Appellant | : | No. 263 MDA 2024 |

Appeal from the Judgment of Sentence Entered December 12, 2023
In the Court of Common Pleas of Centre County Criminal Division at
No(s): CP-14-MD-0002000-2023

BEFORE: PANELLA, P.J.E., MURRAY, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED: SEPTEMBER 27, 2024**

Appellant, Andrzej Mieckowski, appeals from the judgment of sentence entered in the Centre County Court of Common Pleas, following his conviction for indirect criminal contempt of court ("ICC") for violating an order under the Protection from Abuse ("PFA") Act. We affirm.

The relevant facts and procedural history of this case are as follows. Appellant and Leticia Oseguera are the parents of a child ("Child"), though they are no longer in a romantic relationship. As a result of Appellant's actions, which included a history of monitoring Ms. Oseguera and Child via AirTag and via car, Ms. Oseguera has a final PFA order against Appellant. Child takes dance lessons at the Dance Academy at Nittany Mall in State College every Thursday from 5:00 p.m. to 7:30 p.m., and Appellant was aware of that schedule.

On November 28, 2023, Ms. Oseguera picked Child up around 7:30 p.m.

following her dance lesson. As Ms. Oseguera left the mall parking lot, she noticed a blue minivan that resembled Appellant's car. She began to drive home. Shortly thereafter, Ms. Oseguera saw a car come up quickly behind her, passing on the right. After seeing the license plate, Ms. Oseguera realized that Appellant was driving the car. Due to traffic conditions, Ms. Oseguera was unable to get away from Appellant. After returning home, she reported the incident at 8:03 p.m. At the exact moment Ms. Oseguera was calling 911, Appellant called her and asked to speak with Child.

The police contacted Appellant, who claimed he had legitimate business at the mall at that time at a friend's business. However, in the officer's opinion, there were more direct routes that Appellant could have used to return home.

Following a hearing on December 12, 2023, the trial court found Appellant guilty of ICC for violating the order, and sentenced Appellant to six months of reporting probation.

Appellant timely filed a notice of appeal on January 8, 2024. The next day, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On January 30, 2024, Appellant complied.

On appeal, Appellant raises the following issue for review:

> Did the [trial] court lack sufficient evidence from which to conclude that [Appellant] violated a protection order not to harass or stalk plaintiff where [Appellant] offered an unrefuted explanation for his legitimate presence in a public mall and the conclusion that he followed her on her drive

home or was even aware of her presence on the highway was sheer speculation?

(Appellant's Brief at 5).

Appellant admits that there is a PFA precluding him from stalking Ms. Oseguera or Child, but Appellant argues that he did not violate the order merely by driving home from work. Appellant claims there was no evidence to support the conclusion that he was even aware of Ms. Oseguera being on the same highway. Appellant maintains that for a substantial portion of the drive, she was behind him, or abreast of him. Appellant insists that coincidence is not sufficient to support a conviction and concludes there was insufficient evidence to convict him of ICC. We disagree.

Our standard and scope of review in this case are as follows:

When examining a challenge to the sufficiency of the evidence:

The standard we apply…is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received

- 3 -

must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

This standard is equally applicable in cases where the evidence is circumstantial, rather than direct, provided that the combination of evidence links the accused to the crime beyond a reasonable doubt.

*Commonwealth v. Orr*, 38 A.3d 868, 872-73 (Pa.Super. 2011) (*en banc*), *appeal denied*, 617 Pa. 637, 54 A.3d 348 (2012) (internal citations, quotation marks, and emphasis omitted).

The ICC statute provides, in relevant part:

**§ 6114. Contempt for violation of order or agreement**

**(a) General rule.--**Where the police, sheriff or the plaintiff have filed charges of indirect criminal contempt against a defendant for violation of a protection order issued under this chapter, a foreign protection order or a court-approved consent agreement, the court may hold the defendant in indirect criminal contempt and punish the defendant in accordance with the law.

23 Pa.C.S.A. § 6114(a). This Court has explained:

The purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse. Where a PFA order is involved, an indirect criminal contempt charge is designed to seek punishment for violation of the protective order. A charge of indirect criminal contempt consists of a claim that a violation of an order or decree of court occurred outside the presence of the court. To establish indirect criminal contempt, the Commonwealth must prove: 1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted

- 4 -

with wrongful intent.

> When reviewing a contempt conviction, much reliance is given to the discretion of the trial judge. Accordingly, the appellate court is confined to a determination of whether the facts support the trial court decision. We will reverse a trial court's determination only when there has been a plain abuse of discretion.

***Commonwealth v. Lambert***, 147 A.3d 1221, 1226 (Pa.Super. 2016) (internal citations, quotation marks, and footnote omitted).

Instantly, the trial court observed:

> Here, [Appellant's] testimony at the December 12, 2023 hearing confirmed that [Ms. Oseguera] held a final PFA Order against [Appellant] and that [Appellant] was both aware of the PFA Order and aware of the conduct prohibited under the PFA Order. It appears that [Appellant] may have initially been at the Nittany Mall for a legitimate purpose, as State College Police Department Officer Kevin Orndorff's … investigation confirmed that [Appellant] was assisting his friend's business at the Nittany Mall with some work related to the heating system, pursuant to [Appellant's] special expertise in air conditioning and heating and his having remodeled the business space. When leaving the Nittany Mall, however, [Appellant] chose to travel in close proximity to Ms. Oseguera's vehicle, causing her and the parties' daughter distress, rather than take a more direct route to his home that would have avoided any proximity to Ms. Oseguera.
>
> This [c]ourt's review of the December 12, 2023 hearing's transcript indicates that [Appellant] has a history of monitoring the locations of Ms. Oseguera and the parties' daughter, as well has having expressed troubling and unsupported views that Ms. Oseguera may have, *inter alia*, put the parties' daughter at risk of sex trafficking. Officer Orndorff, being familiar with area streets due to his work in the State College Police Department, provided testimony to there being other, more direct routes to [Appellant's] home from the Nittany Mall and Ms. Oseguera testified that

[Appellant's] vehicle traveled in proximity to hers before erratically making a left onto Atherton Street. [Appellant] offered that one of the purportedly more direct routes, through Lemont, is actually slower than the one he traveled. The reality is that [Appellant], being aware of the PFA Order in place, could have taken a route home that would have avoided any proximity to Ms. Oseguera. All said, the totality of the evidence presented at the December 12, 2023 hearing, particularly the credible testimony of Ms. Oseguera, was sufficient for this [c]ourt to conclude that [Appellant] was aware of Ms. Oseguera's presence on November 28, 2023 and that he volitionally chose to travel in proximity to her in a harassing manner, intending to be near her, in violation of the PFA Order.

(Trial Court Opinion, 2/22/24, at 3-4).

The record supports the court's analysis. Appellant admits that he was aware of the PFA order. As was within its purview, the court credited both Ms. Oseguera's testimony that Appellant followed her in his car, as well as Officer Orndorff's testimony that there were other routes Appellant could have taken which would have avoided proximity to her. **See Lambert, supra**. Viewed in the light most favorable to the verdict winner, the evidence was sufficient to support Appellant's ICC conviction. **See Orr, supra**. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/27/2024